IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TRACY BEATTY,<br>       Petitioner,<br><br>       v.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>       Respondent. | CIVIL ACTION No. 4:09-CV-225<br><br>CAPITAL CASE<br><br>Execution Date: November 9, 2022 |

**REPLY IN SUPPORT OF MOTION TO COMPEL THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE TO UNSHACKLE PETITIONER'S HANDS DURING EXPERT EVALUATIONS**

Tracy Beatty, an indigent prisoner who faces execution on November 9, 2022, is scheduled to be evaluated by two mental health professionals next week. ECF No. 72 at 1. Mr. Beatty's court-appointed counsel scheduled these evaluations to prepare a clemency application and other appropriate court filings. The experts have been approved by the Texas Department of Criminal Justice ("TDCJ") for contact visits with Mr. Beatty. The only issue before this Court is whether Mr. Beatty's hands will be cuffed.

Mr. Beatty's experts have informed this Court, and the Director does not dispute, that handcuffing Mr. Beatty during the evaluations will substantially frustrate their ability to perform the requested services. *See* ECF No. 72 at Exs. 1 & 2. Since 2021, when TDCJ began to require court orders to uncuff prisoners during evaluations, undersigned counsel are unaware of any court refusing to issue an order requiring the removal of handcuffs when asked to do so. Indeed, the Director himself moves for court orders authorizing the removal of handcuffs when his own

1

experts perform evaluations. *See, e.g.*, Director's Motion to Compel, *Panetti v. Lumpkin*, No. 1:04-cv-00042 (W.D. Tex. June 29, 2022), ECF No. 264; Director's Unopposed Motion to Compel, *Washington v. Lumpkin*, No. 4:07-cv-721 (S.D. Tex. Feb. 15, 2022), ECF No. 226. Yet despite pointing to no security concerns specific to Mr. Beatty, the Director opposes Mr. Beatty's request for this entirely routine accommodation. TDCJ's refusal impairs counsel's access to, and ability to represent, Mr. Beatty.

**I. The plain language of 18 U.S.C. § 3599(f) as well as *McFarland v. Scott*, 512 U.S. 849 (1994), and its progeny authorize *both* the provision of services and funding for them.**

The Director asserts that § 3599 "does nothing more than provide funding to an indigent defendant charged with a crime punishable by death." ECF No. 74 at 2. The Director argues that "[t]he statute does not confer jurisdiction upon a federal district court beyond that necessary to grant a request for funds," and "[t]here is no caselaw or anything in the plain language of § 3599 that would indicate otherwise." *Id.* at 2–3. The Director is wrong on both counts.

**A. The plain language of § 3599(f) gives this Court power to authorize the provision of services.**

Section 3599(f) explicitly vests this Court with the authority to perform at least two separate actions:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may [1] *authorize the defendant's attorneys to obtain such services on behalf of the defendant and*, if so authorized, [2] shall order the payment of fees and expenses therefor under subsection (g).

18 U.S.C. § 3599(f) (emphasis added).

Congress has explicitly conferred jurisdiction on federal courts to "authorize" counsel to "obtain"—not just receive funding for—expert services. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their

2

ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Black's Law Dictionary defines "authorize" as "[t]o give legal authority; to empower" or "[t]o formally approve; to sanction." AUTHORIZE, Black's Law Dictionary (11th ed. 2019). "Obtain" means "[t]o succeed either in accomplishing (something) or in having it be accomplished; to attain by effort <to obtain a loan>." OBTAIN, Black's Law Dictionary (11th ed. 2019). Thus, the plain wording of § 3599(f) gives this Court jurisdiction to "empower" defense counsel to "attain" or "succeed in accomplishing" the reasonably necessary expert services. This clause is independent from the clause that empowers this Court to pay the expert's fees.

The Director—without citation to any binding authority to support his position—would have the Court simply read this clause out of § 3599(f), leaving counsel with the ability to obtain funding for an expert evaluation but no legal authority to attain one. The Director's "reading is thus at odds with one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ...." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotations omitted). Section 3599(f) vests this Court with jurisdiction to empower Mr. Beatty's counsel to obtain those services. Mr. Beatty has requested nothing more.

### B. *McFarland* and its progeny have construed the statute to authorize the provision of reasonably necessary services.

The Director's reading of § 3599 conflicts with not just the language of the statute but also binding precedent construing it. In *McFarland*, 512 U.S. at 849, the Supreme Court considered whether the statute[1] permitted the appointment of counsel prior to the filing of an application for habeas relief. In holding that the statutory right to legal assistance includes preapplication

---

[1] *McFarland* addressed 21 U.S.C. § 848(q)(9), which was later recodified as 18 U.S.C. § 3599(f).

3

assistance, the Court recognized that the "services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified." *Id.* at 855. To ensure that the provision authorizing counsel to obtain services on behalf of the defendant would be meaningful, the Court interpreted it as conferring jurisdiction to effectuate the statute's purpose by appointing counsel and authorizing services prior to filing. *Id.* at 855–58.

In other words, the statute does more than merely authorize the district court to dispense funding to petitioner's counsel—rather, it codifies "a right for that counsel *meaningfully* to research and present a defendant's habeas claims." *Id*. at 858 (emphasis added). This interpretation, the Court explained, "is the only one that gives meaning to the statute as a practical matter." *Id.* at 855; *see also Cherrix v. Braxton*, 131 F.Supp.2d 756, 774 (E.D. Va. 2001) (applying *McFarland* to issue order funding DNA testing *and* ordering State to preserve evidence under § 848(q)(9)).

## II. The Director's opposition to the requested services is premised on materially distinguishable non-binding decisions and irrelevant rules of habeas corpus procedure.

The Director concedes that no relevant Fifth Circuit Court of Appeals precedent supports his reading of § 3599. ECF No. 74 at 3. Instead, the Director points this Court to non-binding decisions from other circuits in which the petitioner sought and was denied discovery (including one in which the petitioner sought discovery from a third party), and rules governing fact development of claims pending before a district court. But Mr. Beatty does not request discovery; he requested the services described in § 3599.

### A. The out-of-circuit decisions in *Baze* and *Leavitt* concern discovery and have no bearing on Mr. Beatty's request for an order authorizing effective expert services.

Contrary to the Director's claim, Mr. Beatty is *not* seeking discovery. *See* ECF No. 74 at 5. Mr. Beatty is not asking this Court to compel the Director, his staff, or a third party to provide

information. The Director's digressive discussion of the issue has no bearing on a straightforward application of § 3599 to a request for an order directing the prison to reasonably accommodate the provision of expert services by federally appointed counsel.

The Director asserts that *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011), presents "facts [that] are virtually identical to the present situation." ECF 74 at 3. That is incorrect. In *Baze*, the petitioner sought an order compelling prison employees to sit for interviews with his investigator. *Baze*, 632 F.3d at 340. As the Sixth Circuit characterized the controversy, "[h]ere, Baze requests that the district court order state prison officials to *provide him with information that he can use* in a state clemency proceeding." *Id*. at 341 (emphasis added). The Sixth Circuit held that while § 3599 authorized the investigative services, it did not authorize a federal court to compel cooperation with the investigator or create a right to acquire information from the prison over all possible obstacles. *Id*. at 343.

Mr. Beatty has not sought discovery from the Director or his staff and is not asserting a right compel the Director to provide information in support of his clemency application. At issue here is whether Mr. Beatty's experts will have *access to the client*, not court-compelled access to interview the Director's staff. Even if *Baze* were binding on this Court, it has no bearing on Mr. Beatty's request for the reasonably necessary services of mental health experts.

The Director's other authority is even farther afield. In *Leavitt v. Arave*, 682 F.3d 1138 (9th Cir. 2012), the petitioner sought to compel a third party—the Blackfoot Police Department—"to submit for forensic testing blood samples taken from the crime scene." *Id*. at 1141. The petitioner argued that such discovery was warranted in support of a pending Rule 60(b) motion. In the alternative, the petitioner invoked § 3599(f). The Ninth Circuit dispensed with the petitioner's alternative § 3599 argument with a one-sentence citation to *Baze*. *Id.* Unlike Mr. Leavitt, Mr.

Beatty is not seeking discovery, much less discovery from a third party. The Ninth Circuit's denial of such discovery is not germane to Mr. Beatty's right to expert services.

> **B. No rule of habeas corpus procedure justifies handcuffing Mr. Beatty during mental health expert evaluations that have been approved and scheduled to take place in a room designated, and routinely used, for this purpose.**

The Director, after mischaracterizing Mr. Beatty's motion as a request for discovery, predictably invokes limitations on a petitioner's right to seek discovery relevant to a claim pending before a federal court. ECF No. 74 at 5–7. Again, because Mr. Beatty is not seeking to compel information from the Director or a third party, the Director's discussion of discovery in federal habeas corpus proceedings is irrelevant. The Director's reliance on 28 U.S.C. § 2254(e)(1), *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), and *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022), is likewise misplaced, because those authorities address limits on factual development in claims pending before federal courts. As the Director agrees, there is no habeas petition pending before this Court. Thus the procedural rules that apply *after* the filing of a habeas petition are not determinative of whether Mr. Beatty's request for *pre–filing* assistance is reasonably necessary pursuant to § 3599 and *McFarland*.

> **III. The services to be provided—two mental health evaluations—are reasonably necessary for the preparation of Mr. Beatty's clemency proceedings and other potentially available judicial remedies contemplated under § 3599.**

To undersigned counsel's knowledge, Mr. Beatty has never had an in-person mental health evaluation by an expert working as a member of his legal team. Numerous red flags in Mr. Beatty's background indicate the need for mental health evaluations, including:

- The Director has shuttled Mr. Beatty to the Wayne Scott Unit (formerly known as Jester IV and now often referred to as "Scott (J4)"),[2] a unit for prisoners who need mental health interventions. In

---

[2] *See* https://www.tdcj.texas.gov/unit_directory/j4.html.

- counsel's experience, death row prisoners are not transported to Scott (J4) unless they are severely mentally ill.

- Mr. Beatty was most recently sent to Scott (J4) in May of 2022 for a mental health crisis intervention. He was experiencing visual and auditory hallucinations and was placed on "crisis management status" because of suspected decompensation.

- During a recent visit at the Polunsky Unit with a member of Mr. Beatty's legal team, Mr. Beatty exhibited some of the same delusional thinking documented by prison officials before his May 2022 transfer to Scott (J4).

- The Director's staff are treating Mr. Beatty with drugs intended to control bipolar mania.

- Mr. Beatty suffers from, and is being treated for, Darier's Disease. The condition is a rare skin disease caused by a genetic mutation. Significantly, research has demonstrated a statistically significant impairment in the cognitive functioning of people with Darier's Disease. Mr. Beatty was first diagnosed with the disease when he was eight years old and the Director's staff continue to treat Mr. Beatty for this condition.

- At the age of five, Mr. Beatty was hit in the head with a baseball bat. The force of the blow was sufficient to dislocate his eye (a condition that persisted until it was surgically repaired seven years later).

Mr. Beatty's medical and mental health history requires further investigation and evaluation. The requested mental health evaluations are critical to counsel's ability to research and identify possible bases for a clemency application and available judicial proceedings. *McFarland*, 512 U.S. at 855. At minimum, none of the habeas corpus-related procedural bars invoked by the Director would preclude consideration of this information in a clemency application.

Furthermore, Mr. Beatty's mental health history and recent decompensation are relevant to whether he is competent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). Mr. Beatty's competence for execution only becomes ripe when an execution is imminent and there is no bar to this Court's consideration of such a claim. *Panetti v. Quarterman*, 551 U.S. 930, 947

(2007) ("The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe."). The Fifth Circuit has held that the failure to provide § 3599 services related to an execution incompetency claim in was error:

> A court may only deny appointment of counsel if litigation of the inmate's claims would be a "wholly futile enterprise."[] This is not the case here. Though Battaglia's *Ford* claim appears to be unexhausted, he may return to state court and file an Article 46.05 petition. As Battaglia notes, there is no procedural barrier or time limit that would prevent him from taking this step. And the plain language of § 3599(e) expressly provides that Battaglia would be entitled to the assistance of federal counsel—supported by federal funding—during this proceeding.[] It is also not "indisputabl[e]" that Battaglia will be unable to make a threshold showing of incompetency. We decline to comment on the merits of his *Ford* claim, but he has presented some evidence of mental illness and delusions. His newly appointed counsel may locate and produce more. As a result, we conclude that the district court erred in declining to appoint new counsel under § 3599.

*Battaglia v. Stephens*, 824 F.3d 470, 474–75 (5th Cir. 2016) (footnotes omitted).

Finally, Mr. Beatty's medical and mental health history raise red flags related to intellectual disability. *See Atkins v. Virginia*, 536 U.S. 304 (2002). If present, an *Atkins* claim is procedurally viable, at a minimum, in state court. The Texas Court of Criminal Appeals has expressly recognized that *Moore v. Texas*, 581 U.S. 1 (2017) ("*Moore I*") constitutes "a new legal basis," satisfying the requirements for authorization of an *Atkins* claim presented in a subsequent habeas application under Article 11.071, § 5(a)(1). *See Ex parte Davis*, No. WR-40,339-09, 2020 WL 1557291 (Tex. Crim. App. Apr. 1, 2020) (not designated for publication), at *3 ("We have previously found *Moore I* to constitute a new legal basis under Article 11.071, § 5."); *Ex parte Gutierrez*, No. WR-70,152-03, 2019 WL 4318678, at *1 (Tex. Crim. App. Sept. 11, 2019) (not designated for publication) (authorizing subsequent application under Article 11.071, § 5(a)(1) based on *Moore I*.) *Moore I* was decided after Mr. Beatty's most recent state habeas application was filed, therefore under Texas law it could constitute a new legal basis for an application.

## Conclusion

Mr. Beatty respectfully asks this Court to grant his request and order the routine accommodation that his hands be unshackled during his upcoming mental health evaluations.

Respectfully submitted,

Thomas Scott Smith
State Bar Number 18688900
P.O. Box 354
Sherman, Texas 75091-0354
email: scottsmithlawyer@gmail.com
Telephone: (903) 868-8686

/s/ *Jeremy Schepers*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, a true and correct copy of the foregoing document was filed in the CM/ECF system, which will serve all registered users in this case.

*/s/ Jeremy Schepers*
Jeremy Schepers