ORIGINAL

1                    REPORTER'S RECORD              75010    1

2                    VOLUME 49 OF 51

3              TRIAL COURT CAUSE NO. 241-0978-04

4

5    THE STATE OF TEXAS          *        IN THE DISTRICT COURT

6    VERSUS                      *        SMITH COUNTY, TEXAS

7    TRACY BEATTY                *        241ST JUDICIAL DISTRICT

8

9

10          _____

11                      PUNISHMENT PHASE

12                     AUGUST 10, 2004

13          _____

                                          FILED IN
14                               COURT OF CRIMINAL APPEALS

15                                     JUN 1 4 2005

16                                 Troy C. Bennett, Jr., Clerk

17   _____

18       On the 10th day of August, 2004, the following

19   proceedings came on to be heard in the above-entitled and

20   numbered cause before the HONORABLE JACK SKEEN, JR., Judge

21   Presiding, held in Tyler, Smith County, Texas:

22

23       Proceedings reported by computerized stenotype machine;

24   Reporter's record produced by computer-assisted

25   transcription.

          STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
                   241ST JUDICIAL DISTRICT COURT
                      SMITH COUNTY, TEXAS

2

1                    A P P E A R A N C E S

2     MR. D. MATT BINGHAM, III
      State Bar Number 00787085
3     Smith County Criminal District Attorney

4     MR. J. BRETT HARRISON
      State Bar Number 00793909
5     MS. APRIL SIKES
      State Bar Number 18348790
6     Assistant Smith County District Attorneys
      Smith County Courthouse, Fourth Floor
7     Tyler, Texas  75702
      Telephone:  903.535.0520
8     Fax:  903.535.0599

9            REPRESENTING THE STATE OF TEXAS

10

11    MR. ROBERT C. PERKINS, JR.
      State Bar Number 15790405
12    MR. KENNETH HAWK
      State Bar Number 09243650
13    Attorneys at Law
      112 East Line Street, Suite 202
14    Tyler, Texas  75702
      Telephone:  903.593.7780

15           REPRESENTING THE DEFENDANT

16

17

18

19

20

21                 REPORTER'S NOTE

22       Uh-huh = Yes - Affirmative response

23       Huh-uh = No - Negative response

24   Quotation marks are used for clarity and do not necessarily
                  indicate a direct quote.
25

        STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
                241ST JUDICIAL DISTRICT COURT
                     SMITH COUNTY, TEXAS

3

1                  I N D E X

2             VOLUME 49 OF ____

3             (PUNISHMENT PHASE)

4                           PAGE   VOL

5  AUGUST 10, 2004

6  OUTSIDE THE PRESENCE OF THE JURY:

7  Objections to the charge...........................4   49

8  IN THE PRESENCE OF THE JURY:

9  Defense rests......................................18   49

10 Both sides close...................................18   49

11 Charge read........................................19   49

12 Closing argument by Ms. Sikes......................31   49

13 Closing argument by Mr. Perkins....................49   49

14 Rebuttal argument by Mr. Bingham...................68   49

15 Jury deliberations.................................85   49

16 Verdict............................................86   49

17 Jury discharged....................................88   49

18 Sentencing........................................101   49

19 Court Reporter's Certificate......................104   49

20

21

22

23

24

25

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

4

```
 1              P R O C E E D I N G S

 2                 (August 10, 2004)

 3       (Open court, defendant present, no jury.)

 4           THE COURT:  Back on the record in Cause

 5  Number 241-0978-04, the State of Texas versus Tracy Beatty.

 6  The State is present; defense counsel are present; the

 7  defendant is present.

 8           The Court has before it a proposed charge of

 9  the Court to give to the jury.

10           The jury, of course, is not in the courtroom.

11           And at this time, has the State had an

12  opportunity to review the proposed charge which has been

13  submitted to the Court to read to the jury on sentencing?

14           MR. BINGHAM:  Judge, we have.

15           THE COURT:  Does the State have any

16  objections to the charge as prepared for the Court to read

17  to the jury?

18           MR. BINGHAM:  We do not.

19           THE COURT:  Mr. Perkins -- or Mr. Hawk, in

20  regard to the proposed charge of the Court to be read to the

21  jury -- well, the Court has several written objections from

22  the Defense and also a request for an instruction from the

23  Defense.

24           Do you want to go on through those?

25           MR. HAWK:  I will, Judge.
```

5

1          First of all, I'm making a presumption here.

2    I think the Court might have said this earlier -- I'm not

3    sure of that -- even though the Defense has not yet rested

4    before the jury, we anticipate that happening when we come

5    back.  So I would make the presumption that our objections

6    in this charge conference would be the same were we to bring

7    the jury in, rest, and we send them right back out.

8          Is that an appropriate presumption?

9          THE COURT:  That is -- you have accurately

10   described the situation.  The Court being aware as what I

11   know right now is about to take place.  If the Court brings

12   the jury in, and then that takes place, I would just send

13   the jury right back out after about 30 seconds.  And then we

14   would go through this charging conference.

15         So you have accurately described what the

16   Court plans to do is complete the charging conference, allow

17   you to make your objections on the record and through your

18   written motions that the Court will rule on.  And then at

19   that point, once we have the charge in final form and the

20   Court knows how much the State and Defense are requesting

21   for argument, then the Court will bring the jury in.

22         And if there is not some change in what the

23   Court anticipates will take place, then the case would be

24   argued and submitted to the jury.  So you've accurately

25   stated that.

6

1          MR. HAWK:  Well, in that case, then here's

2     what we'll do.  If I can go through this, I'll try to do

3     this fairly sequentially.

4          We are going to at this time, prior to the

5     time that the charge is read to the jury, reurge the motions

6     that were filed pretrial that the Court preclude the

7     prosecution receiving the death penalty, that the Court

8     declare the capital sentencing scheme unconstitutional and

9     preclude the death penalty on that basis, and for the Court

10    to hold 37.071 unconstitutional.

11         Those three motions were filed back in April

12    13th and ruled by the Court -- or were submitted for its

13    ruling on June the 18th.  I believe the Court has already

14    stated in the record that you've denied those motions, but

15    we have to reurge those three specific motions at this time.

16         THE COURT:  That's right.  The Court has

17    earlier denied those motions, and the Court will again deny

18    those motions that you just enumerated for the record at

19    this time.

20         MR. HAWK:  We also would reurge all of our

21    objections that we made at the guilt/innocence phase of

22    trial to the evidence anytime it was offered.  We want to

23    renew those objections at this time prior to the time the

24    charge is read to the jury.

25         THE COURT:  And the Court's rulings on your

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

7

1  objections made during the trial and the Court -- those

2  rulings of the Court will stand.

3           MR. HAWK:  Thank you, Judge.

4           Now, we have prepared various writings.  I'll

5  start with the short, fast one.

6           We have submitted a proposed request for a

7  jury instruction that the burden of proof be submitted to

8  the jury to be proved beyond all doubt, especially with the

9  presumption -- excuse me -- especially with the Special

10  Issue Number 1.  It's also cited in there in our written

11  request.

12           Here's where we've got it.  In an indictment

13  in the case, Judge, the indictment makes specific, factual

14  allegations that the defendant did do this, the defendant

15  did do that, the defendant then and there do this.  And

16  they're not qualified like the defendant probably caused the

17  death of or the defendant probably engaged in certain

18  conduct.

19           It is a definitive statement that then the

20  State must prove beyond a reasonable doubt.  The challenge

21  we face in a capital sentencing scheme is, is that the

22  Special Issue Number 1 is whether there's a probability that

23  the defendant would commit criminal acts of violence.  But

24  then the State is only required to prove a probability

25  beyond a reasonable doubt, which, in essence, is a

8

1   qualification on an existing qualification.

2            What we're going to ask the Court to do is

3   instruct the jury that they must be absolutely certain,

4   prove beyond all doubt, that there's a probability that the

5   defendant will commit criminal acts of violence.  We have

6   given that instruction to the Court in writing, in

7   paragraphs -- I guess, cumulative I through VIII.

8            THE COURT:  1 through 8 or 1 through 7?

9            MR. HAWK:  I said 8; there's only 7; you're

10  right.

11           THE COURT:  Okay.

12           MR. HAWK:  6 and 7 are the applications.  So

13  we make that written request prior to the time that the

14  charge is read to the jury on that one.

15           THE COURT:  Do you want me to go ahead and

16  rule on that one?

17           MR. HAWK:  If you would, Judge.

18           THE COURT:  That request for the jury

19  instruction of prove beyond all doubt is denied.

20           MR. HAWK:  Okay.  Second, Judge, we're

21  requesting a specific instruction to the jury regarding

22  residual doubt as mitigation.  Traditionally, this has been

23  left for argument to the parties as to whether residual

24  doubt from the guilt/innocence phase of a trial does rise to

25  the level of mitigating circumstance.  That's left for the

9

1   parties to argue.  What we're asking now is beyond that

2   specific instruction as laid out in our request.

3              THE COURT:  I've got it.  I was reading it.

4   I was reading the proposed requested instruction.

5              All right.  The requested instruction to the

6   jury regarding residual doubt as mitigation is denied.

7              MR. HAWK:  Then, Judge, we have something

8   entitled "Defendant's Objections to the Court's Charge at

9   the Punishment Phase of Trial."  These are a series of Roman

10  Numeral paragraphs.  This I can say is I through VIII.

11             THE COURT:  Do you want go on through those?

12             MR. HAWK:  Yes, I can go through these

13  briefly, Judge.

14             These we submit to you and ask for rulings by

15  submission.  Paragraph I basically deals with the myth of

16  the capital mistrial.  The Court never in its charge tells

17  the jury that the failure of them to agree unanimously on

18  either special issue results in a life sentence.  You just

19  never tell them that in the charge, and we object to it.

20  That's in paragraph I.

21             We're asking for specific relief on that,

22  that they be so informed.  As it stands now, they're left

23  with they can't answer that question, but they're never told

24  what will happen if the question is not answered.

25             THE COURT:  That's number I?

1          MR. HAWK:  Well, that's Roman Numeral I in my

2   objections.  Failure to inform the consequences of inability

3   to agree.

4          MR. PERKINS:  We're looking at a different

5   document, Judge.

6          THE COURT:  I'm sorry, Mr. Hawk.  That's why

7   I was asking you if that was one.

8          "Defendant's Objections to Court's Charge at

9   Punishment Phase of the Trial," Roman Numeral Number I is

10  failure to inform of consequences of inability to agree.

11  I'm with you now.  Go ahead.

12          MR. HAWK:  Right.  And paragraphs I and II

13  deal with that specific realm of objection that we would

14  like to have in the Court's charge, some type of instruction

15  that would clear up this myth for the jury so that the truth

16  be told, they will understand the effect of a nonunanimous

17  verdict.

18          Paragraph III and IV deal with instructions

19  and our objection to any instruction on an issue which is

20  not in the indictment.  Obviously, in traditional punishment

21  terms, the juries are required to assess punishment based

22  upon the allegations in the original indictment, but the

23  Texas capital sentencing scheme adds additional issues which

24  are not presented in the indictment, first, on future danger

25  and then on mitigation not originally charged in the

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

1    indictment.  We object, therefore, to that.

2              Also, we object to the failure of the Court's

3    charge placed upon the mitigation issue on the State, we

4    believe that, which is where it ought to be in any criminal

5    trial on every material issue.

6              Paragraph Number VI, we object to the Court's

7    instructions as to the personal, moral culpability of the

8    defendant as a consideration.  And there is a good

9    recitation of the concept of what mitigation should be and

10   what it ought to be.  And we disagree with the Court's

11   instruction on what that is, although we recognize it's the

12   state of the law.

13             Paragraph VII, the instruction that either

14   circumstance or circumstances, our opinion is that should

15   simply read "whether there is a sufficient mitigating

16   circumstance."  There shouldn't be "or circumstances" in

17   there.

18             Also, we say that the definition as provided

19   by the Court of mitigation as evidence that a juror might

20   regard as reducing the defendant's moral blameworthiness is

21   unfairly limiting what a juror specifically can consider as

22   mitigation because they may think that there is something

23   which means the defendant should get a life sentence rather

24   than death, but it doesn't necessarily reduce the

25   defendant's moral blameworthiness.  We say that's mitigation

12

1   and should be considered under the charge, and we object to

2   that.

3           These are our objections -- I should say

4   global objections in that document.

5           THE COURT:  Mr. Bingham?

6           MR. BINGHAM:   Judge, we would object to what

7   the defendant to -- to what the defendant has proposed in

8   the record to the Court.

9           THE COURT:  I'm sorry.  I couldn't hear you.

10          MR. BINGHAM:  We object.

11          THE COURT:  Then in regard to the defendant's

12  objections to Court's charge at punishment phase of trial

13  and the objections contained therein under Roman Numerals

14  I through VIII as set out by Mr. Hawk in his argument to the

15  Court, that is overruled and denied.

16          MR. HAWK:  Additionally, to give some kind

17  of -- I haven't said this in a few days -- flavor and

18  context to that specific request to some of the defendant's

19  objections, especially with regard to the myth of the

20  capital mistrial, we are going to request that the Judge

21  give the following specific instructions for the following

22  specific verdict form for the jury.

23          It reads as follows:  "We, the jury, are

24  unable to answer Special Issue Number 1," and then a line

25  for the Foreman.  Or "We, the jury, are unable to answer

13

1   Special Issue Number 2."  I should say "and."  I want both

2   of those lines on there and both of those sentences on

3   there.

4              We're going to request that to give some kind

5   of vehicle for the jury to currently -- give some kind of

6   context to their inability to decide, which will also help

7   us show another day that there was error in the charge on

8   not giving the instructions on what a nonunanimous verdict

9   means in the first place.

10             THE COURT:  Which one is that in, Mr. Hawk?

11             MR. HAWK:  That's not in any one.  That was

12  just fresh off the thought process, Judge.

13             THE COURT:  So you need a ruling on that one?

14             MR. HAWK:  Yes, Judge.

15             THE COURT:  That's denied.

16             MR. HAWK:  Okay.  The final document is on

17  the defendant's objections to the Court's charge at

18  punishment.  That's the long one; it's got about 54

19  different reasons why we object to it.  I will be candid

20  with the Court when I tell you that the state of the law is

21  contrary to these specific objections.  I don't want to say

22  they're cumulative, because they're not.  They just have

23  specific differences in them, but as a general proposition,

24  these objections have been stated both in our pretrial

25  motions on the constitutionality of the statute, as well as

14

1    the other filed documents, as well as in our request for

2    special voir dire of the jury and things of that nature.

3                I'll see if there's some special ones that I

4    can give some argument for apart from the submission that

5    I've supplied to the Court.

6                THE COURT:  Mr. Bingham, have you reviewed

7    the defendant's objections to the charge on punishment, the

8    document Mr. Hawk is going over?

9                MR. BINGHAM:  I've reviewed it.

10               THE COURT:  I'm going -- just want to make

11   sure you had.  That's okay.  I'm going to ask you later what

12   your position is.

13               MR. BINGHAM:  Yes, sir.

14               THE COURT:  I just wanted to make sure you

15   had reviewed it since it has 54 subsections, so to speak.

16               MR. BINGHAM:  We received it this morning and

17   had an opportunity to review it.

18               MR. HAWK:  Yeah, it now becoming ripe, Judge,

19   we wanted to present this this morning.  We would submit

20   this document entitled "Defendant's Objections to the Charge

21   at Punishment," and we would offer this for ruling by

22   submission, Judge.  There's no additional argument, other

23   than that contained in the instrument.

24               THE COURT:  All right.  Thank you, Mr. Hawk.

25               MR. HAWK:  There's an order attached to it.

15

1   All we ask is that there be a ruling prior to the time the

2   charge is read to the jury.

3           THE COURT:  What's your position,

4   Mr. Bingham, on this Defendant's objections to the Court's

5   charge?

6           MR. BINGHAM:  Judge, we believe what's

7   contained in the Defendant's objections to the charge at

8   punishment is not the current status of the law; that to

9   give any of these instructions to the jury at the punishment

10  stage would be contrary to the existing status of the law.

11  We would object to these and ask the Court to deny the

12  defendant's motion or his request in total.

13          THE COURT:  All right.  Then the Court,

14  having reviewed the defendant's objections to the charge at

15  punishment, being the motion which includes 54 enumerated

16  items, that is overruled and denied.

17          The Court is signing the order provided by

18  Mr. Hawk at this time, overruling and denying the

19  defendant's objections to the charge at punishment, being

20  the objections, the 54 listed in that motion, also the

21  defendant's objections to the Court's charge at the

22  punishment phase of trial, which was the defendant's

23  objections in the written motion.

24          Mr. Hawk, do you just need one order signed,

25  Mr. Hawk?  Mr. Hawk, I think I just have one order up here.

16

1   Do you just need one order signed?

2                  MR. HAWK:  I think I just attached one to

3   that long one.  I think you just gave oral rulings on the

4   rest of them.  What I'll do, Judge, is I'll provide orders

5   on the rest of them.  For some reason, the order didn't make

6   it to you.

7                  THE COURT:  Well, the Court's rulings have

8   been entered on the record prior to -- obviously, prior to

9   the submission of the charge to the jury.  I have signed the

10  one order that was behind the 54-item motion, which was

11  overruled and denied.  And the Court has overruled and

12  denied the other motions and requested instructions.  If you

13  want me to, I'll sign an order on each of those.

14                 MR. HAWK:  If there were objections, they

15  were overruled; and if they were a motion, it was denied?

16                 THE COURT:  Correct.  The motions are denied.

17  Any objections are overruled.

18                 MR. HAWK:  I think that record is clear.

19                 If I could be excused for a moment.  The

20  Court's staff had a question of me.

21                 THE COURT:  Yes, sir.

22                 Still being on the record, obviously, the

23  jury not yet having been in the courtroom, outside the

24  presence of the jury in Cause 241-0978-04, how much time to

25  argue at sentencing does the State request?

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

17

1               MR. BINGHAM:  One hour, Judge.

2               THE COURT:  Mr. Perkins, on behalf of the

3    defendant?

4               MR. PERKINS:  That should be ample time, Your

5    Honor.

6               THE COURT:  All right.  One hour, then, will

7    be allotted by the Court per side.

8               Who will open, Mr. Bingham?

9               MR. BINGHAM:  Ms. Sikes will, Judge.

10              THE COURT:  Do you need a warning,

11   Mrs. Sikes, in terms of argument?

12              MS. SIKES:  I probably need several, Judge.

13   In terms of argument, if I could have a warning after

14   30 minutes.

15              THE COURT:  All right.  Thank you.

16              Do you need a warning, Mr. Perkins?

17              MR. PERKINS:  (Shakes head negatively.)

18              THE COURT:  I didn't think so.

19              The Court will keep track of the time, and if

20   you push up on that hour, the Court will let you know when

21   you've got about five minutes to go in case that develops.

22   So you will have some type indication when you're up close.

23              MR. PERKINS:  Thank you, Judge.

24              THE COURT:  Mr. Bingham, I take it you will

25   be doing the second half?

1              MR. BINGHAM:  I'll be doing the closing.

2              THE COURT:  You need some warning up towards

3    the end of your 30?

4              MR. BINGHAM:  When I have five minutes

5    remaining, Judge, if I get that far.

6              THE COURT:  Are we ready for the jury?

7    Anything further before we bring the jury in?

8              THE BAILIFF:  All rise for the jury.

9              (The jury enters the courtroom.)

10             (Open court, defendant and jury present.)

11             THE COURT:  Be seated, please.  Thank you.

12             Mr. Perkins, the State having rested, what

13   says the Defense?

14             MR. PERKINS:  Your Honor, Ladies and

15   Gentlemen of the Jury, the Defense rests as well.

16             THE COURT:  Thank you, Mr. Perkins.

17             MR. BINGHAM:  Your Honor, the State would

18   close.

19             MR. PERKINS:  And the Defense closes as well.

20             THE COURT:  Thank you, Mr. Perkins.

21             Ladies and Gentlemen, all of the evidence in

22   this case at the sentencing phase is now concluded.  Both

23   sides having rested and closed, the Court is going to now

24   read to you the charge of the Court, which has all of the

25   law contained in it that will govern and guide you and that

19

1  you will follow and the law that you will apply in deciding

2  the issues at the sentencing phase of this trial.

3            Once the Court finishes reading the charge of

4  the Court to you, which contains all the law that you will

5  need and all the instructions you will need, each side in

6  the case, as you saw before, will have an opportunity to

7  argue the sentencing phase of the trial.

8            The State will proceed first.  Ms. Sikes will

9  give the opening argument on behalf of the State, Mr.

10 Perkins will give the argument on behalf of the defendant,

11 and then Mr. Bingham will give the closing argument on

12 behalf of the State.

13           At the end of the arguments, the case will be

14 submitted to you.  As you already know, the Court's charge

15 will be taken into the jury room by you.  In the event there

16 is any evidence during your deliberations that you need that

17 was introduced anywhere in the trial, then you would be able

18 to simply communicate that to Carleton, and he would

19 communicate it to me, and the Court will have it sent to

20 you.

21           So at this time, the Court will read the

22 charge of the Court to you.

23           "Cause Number 241-0978-04, the State of Texas

24 versus Tracy Beatty:  Ladies and Gentlemen of the Jury, by

25 your verdict returned in this case, you have found the

20

1  defendant, Tracy Beatty, guilty of the offense of capital

2  murder, which was alleged to have been committed on or about

3  the 25th day of November, 2003, in Smith County, Texas.

4          "It is necessary now for you to determine

5  from all of the evidence in the case the answers to certain

6  questions called special issues in this charge.  The Court

7  instructs you further, however, as follows:  The mandatory

8  punishment for capital murder is death or confinement in the

9  Institutional Division of the Texas Department Of Criminal

10  Justice for life.

11          "In deliberating on Special Issue Number 1

12  and Special Issue Number 2, submitted in this charge, the

13  jury shall consider all evidence admitted at the guilt or

14  innocence stage and the punishment stage of this trial,

15  including evidence of the defendant's background or

16  character or the circumstances of the offense that militates

17  for or mitigates against the imposition of the death

18  penalty.

19          "The burden of proof in answering Special

20  Issue Number 1 still rests upon the State and never shifts

21  to the defendant.  Special Issue Number 1 must be proven by

22  the State beyond a reasonable doubt.  Therefore, before

23  Special Issue Number 1 may be answered yes, all jurors must

24  be convinced by the evidence beyond a reasonable doubt that

25  the answer to such special issue should be yes.

21

1         "If the jury unanimously determines and only

2    if such determination is unanimous that the State has proved

3    Special Issue Number 1 beyond a reasonable doubt, that is,

4    the State has proved beyond a reasonable doubt that there is

5    a probability that the defendant, Tracy Beatty, would commit

6    criminal acts of violence that would constitute a continuing

7    threat to society, then the jury foreman will so record the

8    jury's answer of yes to Special Issue Number 1 by signing

9    his or her name to the finding reflecting such answer on the

10   form provided for that purpose.

11        "You are further instructed that if any

12   juror, after considering the evidence and these

13   instructions, has a reasonable doubt as to whether the

14   answer to Special Issue Number 1 should be answered yes,

15   then such juror should vote no to Special Issue Number 1 in

16   the jury's deliberations.

17        "If 10 jurors or more vote no to Special

18   Issue Number 1, then the answer of the jury shall be no to

19   that issue, and the jury foreman will so record the jury's

20   answer of no by signing his or her name to the finding

21   reflecting such answer on the form for that purpose.

22        "If in answering Special Issue Number 1, the

23   vote of the jurors is not unanimously yes or not at least 10

24   in favor of an answer of no, then there shall be no answer

25   for that special issue, and the jury foreman shall not sign

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

22

1   his or her name to that answer form for that Special Issue

2   Number 1.

3             "Members of the jury need not agree on what

4   particular evidence supports a negative answer to Special

5   Issue Number 1.  The burden of proof in answering Special

6   Issue Number 1 rests upon the State throughout the trial and

7   never shifts to the defendant.

8             "The fact that a person has been arrested,

9   confined, or indicted for or otherwise charged with the

10  offense gives rise to no inference at his trial.  With

11  respect to any and all issues in this trial, the law does

12  not require a defendant to produce any evidence at all, and

13  the defendant has no burden of proof as to any issue in the

14  trial of this case.

15            "It is not required that the prosecution

16  prove an affirmative answer to Special Issue Number 1 beyond

17  all possible doubt.  It is required that the prosecution's

18  proof excludes all reasonable doubt concerning an

19  affirmative answer to Special Issue Number 1.

20            "You are further instructed that if the jury

21  unanimously returns an affirmative finding to both Special

22  Issue Number 1, the jury shall answer Special Issue Number

23  2.  If, however, the jury returns a negative answer to

24  Special Issue Number 1 or if the jury has not answered

25  Special Issue Number 1, then under the Court's instructions

23

1   in this charge, do not answer Special Issue Number 2.

2              "If the jury has answered Special Issue

3   Number 1 yes, then the jury shall answer Special Issue

4   Number 2 either yes or no.  Before Special Issue Number 2

5   may be answered no, all jurors must be convinced that the

6   answer to such issue should be no.

7              "If the jury unanimously determines and only

8   if such determination is unanimous that the answer to

9   Special Issue Number 2 is no, then the jury foreman will so

10  record the jury foreman's answer to Special Issue Number 2

11  by signing his or her name to the finding reflecting such

12  answer on the form provided for that purpose.

13             "If 10 jurors or more vote yes to Special

14  Issue Number 2, then the answer of the jury shall be yes to

15  that issue, and the jury foreman will so record the jury's

16  answer by signing his or her name to the finding reflecting

17  such answer on the form for that purpose.

18             "If in answering Special Issue Number 2, the

19  vote of the jurors is not unanimously no or not at least 10

20  in favor of an answer of yes, then there shall be no answer

21  for that special issue, and the jury foreman should not sign

22  his or her name to any answer form for that Special Issue

23  Number 2.

24             "Members of the jury need not agree on what

25  particular evidence supports an affirmative answer to

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

24

1   Special Issue Number 2.   In deliberating on Special Issue

2   Number 2 submitted in this charge, the jury shall consider

3   all evidence admitted at the guilt or innocence stage and

4   the punishment stage of this trial, taking into

5   consideration all of the evidence, including the

6   circumstances of the offense, the defendant's character and

7   background and the personal moral culpability of the

8   defendant in determining whether or not there is sufficient

9   mitigating circumstance or circumstances to warrant that a

10  sentence of life imprisonment rather than a death sentence

11  be imposed.

12          "Further, the jury is instructed to consider

13  mitigating evidence to be evidence that a juror might regard

14  as reducing the defendant's moral blameworthiness.

15          "You are instructed that under the law

16  applicable in this case, if the jury answers that a

17  circumstance or circumstances warranted a sentence of life

18  imprisonment rather than a death sentence be imposed, the

19  Court will sentence the defendant to imprisonment in the

20  Institutional Division of the Texas Department of Criminal

21  Justice for life.

22          "Under the law applicable in this case, if

23  the defendant is sentenced to imprisonment in the

24  Institutional Division of the Texas Department of Criminal

25  Justice for life, the defendant will become eligible for

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

25

1   release on parole but not until the actual time served by

2   the defendant equals 40 years without consideration of any

3   good conduct time.

4                "It cannot accurately be predicted how the

5   parole laws might be applied to this defendant if the

6   defendant is sentenced to a term of imprisonment for life

7   because the application of those laws will depend on

8   decisions made by prison and parole authorities.  But

9   eligibility for parole does not guarantee that parole will

10  be granted.

11               "Our law provides that a defendant may

12  testify in his own behalf if he elects to do so.  This,

13  however, is a privilege accorded to a defendant and in the

14  event he elects not to testify, that fact cannot be taken as

15  a circumstance against him.

16               "In this case, the defendant has elected not

17  to testify, and you are instructed that you cannot and must

18  not refer or allude to that fact throughout your

19  deliberations or take it into consideration for any purpose

20  whatsoever as a circumstance against the defendant nor will

21  you refer to or discuss any matter not before you in

22  evidence.

23               "At times throughout the trial, the Court has

24  been called upon to pass on the question of whether or not

25  certain offered evidence might properly be admitted.  You

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

26

1  are not to be concerned with the reasons for such rulings

2  and are not to draw any inferences from them.

3  　　　　　　"Whether offered evidence is admissible is

4  purely a question of law.  In admitting evidence to which an

5  objection is made, the Court does not determine what weight

6  should be given such evidence nor does it pass on the

7  credibility of the witnesses.

8  　　　　　　"As to the offer of evidence that has been

9  rejected by the Court, you, of course, must not consider the

10  same.  As to any question to which an objection was

11  sustained, you must not conjecture as to what the answer

12  might have been or as to the reason for the objection.

13  　　　　　　"Specifically, the Court has sustained

14  objections and given you explicit instructions to disregard

15  irrelevant, improper, and inadmissible questions, answers,

16  and evidence in this trial.

17  　　　　　　"You are reminded of the instruction of the

18  Court given you in this trial, and you are instructed to

19  carefully follow those instructions in your deliberations.

20  You are to deliberate only on evidence that is properly

21  before you in this trial and to give this case individual

22  deliberation based only on the evidence admitted before you

23  in this trial.

24  　　　　　　"You are instructed that you are not to allow

25  yourselves to be influenced to any degree whatsoever by what

27

1   you may think or surmise the opinion of the Court to be.

2   The Court has no right, by any word or any act, to indicate

3   any opinion respecting any matter of fact involved in this

4   case nor to indicate any desire respecting its outcome.

5            "The Court has not intended to express any

6   opinion upon any matter of fact in this case, and if you

7   have observed anything which you have or may interpret as

8   the Court's opinion upon any matter of fact in the case, you

9   must wholly disregard it.

10           "You are further instructed that any

11  statements of counsel made during the course of the trial or

12  during argument not supported by the evidence or statements

13  of law made by counsel not in harmony with the law, as

14  stated to you by the Court in these instructions, are to be

15  wholly disregarded.

16           "You are charged that it is only from the

17  witness stand that the jury is permitted to receive evidence

18  regarding this case, and no juror is permitted to

19  communicate with any other juror anything he or she may have

20  heard regarding the case from any source other than the

21  witness stand.

22           "It is not permissible of you under any

23  circumstances in answering the special issues to decide this

24  same by lot or by straws or by any method of chance.

25  Deciding a case by lot or by any method of chance is not

28

1 permissible, and you are instructed in this case that you
2 must not consider any proposition of this character, but the
3 answers to the special issues must be determined and agreed
4 upon by each juror by the facts of the case as testified to
5 by the witnesses and the law as given you in the charge of
6 the Court.

7 "You are the exclusive judges of the
8 facts proved -- of the facts provided, of the credibility of
9 the witnesses, and the weight to be given to the testimony,
10 but you are bound to receive the law from the Court, which
11 is herein given you, and be governed thereby.

12 "After you have retired to consider your
13 verdict, no one has any authority to communicate with you
14 except the officer or bailiff who has you in charge. You
15 may communicate with this Court in writing, signed by your
16 presiding juror, through the officer or bailiff who has you
17 in charge. Do not attempt to talk to the officer, the
18 attorneys, or the Court concerning any question you may
19 have.

20 "After you have arrived at your verdict, you
21 may use the appropriate verdict form or forms attached
22 hereto by having your presiding juror sign the particular
23 form or forms which conforms to your verdict." That's
24 signed by Jack Skeen, Jr., Presiding Judge of the 241st
25 District Court.

29

1      The special issues with forms for your answer

2 or answers are as follows:

3      "Special Issue Number 1:  Is there a

4 probability that the defendant, Tracy Beatty, would commit

5 criminal acts of violence that would constitute a continuing

6 threat to society?

7      "Answer to Special Issue Number 1:  We, the

8 jury, unanimously find and determine beyond a reasonable

9 doubt that the answer to this Special Issue Number 1 is yes"

10 with a place for the Foreman to sign;

11      Or "We, the jury, because at least 10 jurors

12 do not find or have a reasonable doubt as to the matter

13 inquired about in this Special Issue Number 1, find and

14 determine that the answer to this Special Issue Number 1 is

15 no" with a line for the Foreman to sign.

16      "If you have unanimously answered Special

17 Issue Number 1 yes, then answer Special Issue Number 2.

18 Otherwise, do not answer Special Issue Number 2.

19      "Special Issue Number 2:  Taking into

20 consideration all of the evidence, including the

21 circumstances of the offense, the defendant's character and

22 background, and the personal moral culpability of the

23 defendant, is there sufficient circumstance or circumstances

24 to warrant that a sentence of life imprisonment rather than

25 a death sentence be imposed?

30

1    "Answer to Special Issue Number 2:  We, the

2    jury, unanimously find and determine the answer to this

3    Special Issue Number 2 is no" with a line for the Foreman to

4    sign;

5              Or "We, the jury, because at least 10 jurors

6    do find the answer to Special Issue Number 2 is yes, do

7    hereby find and answer -- do hereby find and determine that

8    the answer to this Special Issue Number 2 is yes" with a

9    place for the Foreman to sign.

10             The jury certificate.  "We, the jury, return

11   in open court the above answer or answers as our answer or

12   answers to the special issue or special issues submitted to

13   us, and the same is our verdict in this case" with a place

14   for the Foreman to sign.

15             Counsel, will you approach the bench just a

16   second?

17             (At the bench, on the record.)

18             THE COURT:  Under 4 at the bottom of this

19   page down here, if you read down here, "You are further

20   instructed if the jury unanimously returns an affirmative

21   finding to both Special Issue Number 1," I don't believe

22   that word --

23             MR. HAWK:  It should not be there.

24             THE COURT:  I caught that when I was reading

25   it through with the jury.

1              Are you in agreement?

2              MR. PERKINS:  Yes, Your Honor.

3              THE COURT:  Are both the State and Defense --

4    would both the State and Defense be in agreement for the

5    Court to mark the word "both" out and initial it?

6              MR. HAWK:  I think that's fine, Judge.

7              MR. BINGHAM:  I agree.

8              (End of bench conference.)

9              THE COURT:  The Court will now recognize

10   Ms. Sikes for opening argument on behalf of the State.

11             Do you need the podium?

12             MS. SIKES:  Please, sir.

13             THE COURT:  Carleton, would you get the

14   podium, please, sir?

15             THE BAILIFF:  (Complies.)

16             THE COURT:  Ms. Sikes.

17             MS. SIKES:  May it please the Court.

18             THE COURT:  Yes, ma'am.

19             MS. SIKES:  Counsel.

20             I want to start by saying that I feel an

21   unbelievably large responsibility as I stand before you, a

22   responsibility to the victim of this horrendous crime.

23             May I approach the board, Judge?

24             THE COURT:  Yes, ma'am.

25             MS. SIKES:  We lose sight sometimes of the

32

1   fact that this is why we're here, a woman named Carolyn

2   Callie Meme Click.  I feel a responsibility to Ms. Click,

3   and I feel a responsibility to her friends and to her family

4   that are sitting out there in that courtroom.

5           I think the best I can hope for is to

6   somehow, for at least the next 30 minutes or so that I'm

7   with you, try to do justice to her memory.  I'll tell you,

8   I've thought a long time about what I'd say to you if given

9   the opportunity to argue the punishment phase of this case,

10  and I'm going to start by addressing the opening statement

11  made by Mr. Perkins.

12          Do you remember that?  It went something like

13  this:  "Now you'll know why the State was so mad at Tracy

14  Beatty, mad enough to turn a murder into a capital murder."

15  Do you remember that opening statement?

16          Let me tell you this:  I want to say two

17  things about that.  I think it's a great place to start my

18  arguments for these reasons:  First of all, it wrongfully

19  shifts the blame, right?  I'm going to tell you this:  The

20  State of Texas didn't do anything to change a murder into a

21  capital murder.  We didn't do that.  The jury didn't do

22  that.

23          I want -- I want to make that so clear to

24  you, that you took an oath, right?  You followed the law and

25  the evidence.  You returned the right verdict.  If there's

33

1   anybody in this entire courtroom that took a murder and made

2   it a capital, can I give you one guess who it is?

3           There he sits.  Tracy Beatty.  See him

4   sitting there?  He turned a murder into a capital murder by

5   what you've already found him guilty of doing to that

6   precious woman.  And don't you let anybody tell you

7   otherwise.  You hold your heads up high.  You made the right

8   decision.  You based it on the evidence.

9           Now let's talk about that second part of that

10  opening.  It went something like this:  "The State of Texas

11  is mad at Tracy Beatty."  Let me tell you this:  Do you

12  think the State of Texas has a right to be mad at Tracy

13  Beatty?  Let me tell you something.  I'm not speaking for

14  all the State of Texas, but I'm speaking for this part of

15  it:  Me, April Allison Sikes, the chief felony prosecutor

16  for that elected district attorney.

17          And let me tell you something.  If you don't

18  know now when I start that I'm mad, I bet you know it by the

19  time I finish.  And do I have a right to be mad?  Yes.  Do

20  you?  Yes.  This is your community.  He's out there in it

21  killing people.

22          Do you have a right to be mad?  Yes.  Do you

23  have to apologize for it?  Never.  And neither do I and

24  neither does the District Attorney's Office at all.  I'm mad

25  as a prosecutor, I'm mad as a member of this community, and

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

34

1   I'm real mad as a mother.  Y'all have kids.  You have a son.

2   You're expecting a child.  Does it make you mad?  It ought

3   to.

4            I'm not going to spend any time on the

5   charge.  We talked about that in voir dire.  You remember I

6   told you you would get the law from the Judge.  He just read

7   it to you.  Just take it back there just like you did on the

8   other part of the trial.

9            You know the two questions.  The first one --

10  y'all can probably tell them to me.  You know the first one.

11  Is there a probability that the defendant is going to

12  continue to commit criminal acts of violence that would

13  constitute a continuing threat to society, right?

14            You know the second one.  Mitigation.  It

15  says, taking into consideration all the evidence, the

16  circumstances of the offense, the defendant's character and

17  background, the personal moral culpability of the defendant,

18  is there sufficient mitigating circumstance, one or more, to

19  warrant a sentence of life rather than death.

20            We're going to start with that first one.

21  Future danger is what we've called it all along.  You

22  remember in voir dire when I told you there wasn't going to

23  be any magic screen that came down; Judge Skeen wasn't going

24  to say, "Okay.  Well, the first part of the trial is over,

25  right, so let's block that off; don't think about that;

1  let's just move forward"?  It didn't happen, did it?  He

2  didn't instruct you on that.  Did you hear what he said in

3  the charge?  You can consider all of what you've heard.

4              And that's where we're going to start.  When

5  you go back there in the jury room, I want you to remember

6  the story of Carolyn Callie Meme Click.  You don't have to

7  forget that.  I bet you don't.  I bet you won't for a very

8  long time.  And I could drag pictures up here.  There's a

9  stack of them right there.  But you know what?  I think

10  she's been disrespected long enough.  I really do.

11             But don't forget that story.  And the story

12  goes something like this:  It's a story of a mother who

13  loved her son regardless of his criminal history.

14             You remember Tamara Beatty?  She's sitting

15  right out there on that second row.  What did she tell you?

16  She said, "Meme didn't like him, but she loved him," right?

17  He sent her to the hospital before.  You remember Lieanna

18  Wilkerson?  He left her for dead.  That's hard to understand

19  unless you're a parent.

20             And then, you know, she opened up her home

21  and her heart and said, "I want us to be at peace."  And it

22  cost her.  There is no greater love than that of a parent

23  and a child.  I know.  I'm both a child and a parent, and so

24  are y'all.  So Carolyn Click is excited.  Her son is coming

25  home.

36

1    I could tell you the rest of that story.  You

2 know how it starts out.  The first week he's there, she's

3 excited to take him to Lieanna Wilkerson.  She's cooking

4 dinner.  They drive up.  Callie is in tears because he

5 doesn't understand why they've got to drive, berating her

6 already.  Remember?  First week home.  Callie is in tears.

7 Do you think she's starting to get disappointed?  Probably.

8    Fast-forward to that last day when she talked

9 to Betty McCarty out there in tears and said what?  "I

10 finally told him to go."

11    Do you think she was sad it didn't work out?

12 Do you think she was disappointed?  Do you think she was at

13 the end of her rope?  Do you think she felt helpless?  Do

14 you think she felt scared?  Do you think she had a reason to

15 be?  It looks like she did, didn't she?  She didn't know

16 that minutes later, she's breathing her last breath.

17    Don't go back into that jury room and forget

18 that he broke her ribs.  How many times do you think he hit

19 her?  Do you think if you hit somebody one time, your

20 second, third, and fifth ribs are broken?  How many times do

21 you think it took?

22    How about her head?  Both sides.  Do you

23 think he slammed it into something?  Probably.  He's done it

24 before.  Remember that?  Taking her and hitting her head in

25 the wall.  Don't forget that.

37

1          Don't forget that he choked her and strangled
2   her and broke her bones and tied pantyhose around her neck
3   in a knot.  What do you think was going through her mind
4   when he had his hands around her neck?  What do you think
5   she thought?  Why?  Do you think she thought, "What have I
6   done to deserve this?  I love you.  How can you do this to
7   me?"
8          Do you think she prayed?  And do you think it
9   mattered?  Not to that monster.  What did he do?  You saw me
10  grab Mr. Bingham's neck.  Do you think he broke any bones?
11  You go back there, and you think about the force it took to
12  crush her voicebox, to take from her the very life of the
13  person that gave life to him.  How dare he?  Who does he
14  think he is?
15         Let me ask you this:  What kind of monster
16  does it take to commit that kind of crime?  Have you looked
17  pure evil in the face?  There he sits.  Take a good long
18  look because that's it in its purest form.
19         And if that's not enough, he takes her
20  clothes off.  And I'll tell you I can't hardly get past
21  that, that 42-year-old man taking off the bra and the
22  panties of his mother.  Does that anger you?  I'm going to
23  tell you, it infuriates me.  Am I mad at Tracy Beatty?  You
24  bet I am.
25         And if that's not enough, then he goes out

1   and he digs a hole, and he dumps her in it like she's some

2   kind of discarded trash.  You think that's the kind of

3   person that Dr. McNeel and Dr. Gripon were describing to you

4   yesterday?  Yes.  Callous, unfeeling, no social conscience.

5   Do you think they were right?  Yes.  And every single thing

6   you've heard in this courtroom tells you they're right, both

7   of them.

8               And if that's not bad enough, what does he do

9   after that?  He dumps her nude body in that hole and does

10  exactly what?  He spends her money, takes her car, continues

11  to degrade her, spends her hard-earned money on dope to

12  shoot into his sorry body.

13              And probably the worst thing that I just

14  really can't hardly get over is that he touched her things.

15  You know, they may be trash to a lot of people, but let me

16  tell you something.  They meant something to her.

17              I've spent a lot of time thinking about those

18  things.  I can't hardly get past it.  I think about her

19  jewelry, and I wonder, did somebody special give that to

20  her?  Did Tamara play with it when she was playing dress-up

21  at her grandma's house, at Meme's?  And I think, how dare he

22  touch her things?  He had no right.

23              This capital murder case is the ultimate

24  betrayal.  He betrayed the mother who loved him.  And we

25  know she did.  Tamara Beatty told you that.  Meme took those

39

1   kids to see him.  Where?  The penitentiary, where he spent

2   his whole life.  She loved him, and it cost her her life.

3   And I beg you not to forget that.

4            The facts of this case show you that Tracy

5   Beatty is a future danger.  They answer Special Issue

6   Number 1.  And if that's not enough, you got to hear about a

7   little baby named Ashley Coomer.  You remember her?  18

8   months old, 19 months old.  Do you think that crime is

9   important in determining future danger?

10           Think about this.  You think about what kind

11   of person it takes to take an extension cord and expose a

12   wire and touch the head of a child, one and a half, for the

13   pure pleasure of it.  Did he do it to watch her cry?  Did he

14   touch it on her tummy?  You heard her mommy say it looked

15   like a welding torch had touched her tummy.  Did he do it to

16   watch her skin burn, to smell what it was like?

17           What was going through her mind?  How about,

18   "Why is he hurting me?  What did I do wrong?  Where's my

19   mommy?"  And the baby hides in the closet, too young to help

20   herself.  Just old enough to hide.

21           Another victim left in the wake of the evil

22   that is Tracy Beatty, a baby who lost the sparkle in her

23   eyes.  Her mom told you she wasn't the same.  And what was

24   her crime?  Did she cry?  Did she want to play?  Was she

25   hungry?  Was she thirsty?

40

1    Does that show you Tracy Beatty's a future

2  danger?  You bet he is.  The evidence shows you what Tracy

3  Beatty does to people.  And I could go through a long list

4  of victims he left in his wake.

5    Let me group it like this:  He curses them.

6  He humiliates them.  He discriminates against them based on

7  the color of their skin.  He spits in their face.  He shocks

8  them.  He stabs them.  He burns them.  He bites them.  He

9  breaks their bones.  And finally he kills them.  Does that

10 about cover it?

11    That's why I say take a good long look.

12 There evil sits.  It doesn't matter what a person's age is

13 either, does it?  He's got victims from 18 to 19 months old

14 to 62 years old, family members to strangers.  And his

15 victims have endured everything from humiliation to capital

16 murder.

17    You know what I can't get out of my mind is

18 that letter he wrote to Tamara Beatty -- there she sits --

19 saying, "You know what?  You're worthless" because she's a

20 middle-aged kid that happens to be dating a person whose

21 skin is a different color.

22    So what?  What was her crime?  Trying to have

23 a relationship with a sorry dog who's been in the pen his

24 whole life.  That was her crime.  You're not worthless.  Let

25 me tell you something, Tamara Beatty.  There's one worthless

41

1   person in this courtroom, and it's not you.  Another victim

2   left in the wake of Tracy Beatty.

3           And his victims have been guards, and his

4   victims have been inmates, and his victims have lived, and

5   his victims have died.  Let me tell you this:  You remember

6   we talked a lot about what the definition of society is?  I

7   don't think it matters.

8           Let me tell you something.  If your

9   definition is kids, he's hurt them; if your definition is

10  adults, he's hurt them; family members, he's hurt them;

11  strangers, he's hurt them; guards; inmates.  You name it,

12  he's done it.

13          And it doesn't take much to become one of his

14  victims.  You can be a guard and say, "You know, you're

15  really supposed to get your hair cut."  Kapow, your bones

16  are broken like that.

17          Let's talk for a second about how he spent

18  his life.  I'm not going to read all of this.  Here's the

19  drug use:  10, 13, 14, 15, 16, 23, 22, on into the pen,

20  alcohol, marijuana, hasheesh, mushrooms, cocaine, meth,

21  speed, LSD, buying and selling, more victims.  If you're a

22  person who has a drug problem, why don't you just go and

23  sell it to a bunch of other people?  Create a bunch more

24  problems in their lives.

25          Here's his criminal history that I could fit

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

1    on one board.  Look at it.  Thefts, escape, DWIs, injury to

2    a child, probation revoked, and he hadn't been out since,

3    not for more than nine months.  There it is.  Here's other

4    arrests he's admitted to.  You name them.  Evading arrest,

5    criminal trespass, theft by check, possession of marijuana,

6    carrying weapons, DWIs.  You name it, he's done it.

7                You know what that tells you?  That tells you

8    that there is nothing in this system that hadn't been tried

9    at which he hadn't failed.  Four parole attempts; four

10   failures; the last one being just about the worst one of

11   all, wouldn't you agree?  He couldn't make it 60 days

12   without killing his mother and throwing her in a hole.

13               Tracy Beatty does what Tracy Beatty wants to

14   do, period.  He is a selfish career criminal who hurts who

15   he wants to hurt when he wants to hurt them and in the way

16   he chooses to do it.

17               You remember what Dr. McNeel said?  If

18   anything inconveniences him, you're in trouble.  He snaps.

19   Impulse control:  None.  Selfish.  Sociopathic personality.

20   You think those things are important in determining future

21   danger?  Sure they are.  How about the escalation of his

22   violence?  How about the fact that he can't make parole?

23               How about the fact that you've got to be

24   100 percent evil to electrocute a child for the fun of it

25   and to murder your own mother?  You think about a person

43

1   like that, and then you ask yourself, is he going to care

2   about future crimes?  Is he going to stop and think twice?

3   Are you kidding me?

4              Do you think he's going to go down to the

5   penitentiary and go, "Oh, well, I probably ought to not hit

6   that guard in the face."  Gosh, he's so far past that,

7   that's laughable.  That's ridiculous, and it's also

8   pathetic.  He doesn't care.  What makes you think he's going

9   to start caring now?  He never has, and he never will.

10             They also told you he's not choosy about

11  where he commits his crimes.  In the free world, we know

12  about weapons and drugs and alcohol and felony thefts and

13  the 18-month-old baby.  He stabbed a 22-year-old man.  He

14  assaulted his mother, sent her to the hospital, and then

15  committed the ultimate crime of capital murder.  That's

16  while out here with me and you in the few months he's

17  actually been out.

18             While incarcerated, he's escaped; he's fought

19  with inmates; he's spit on officers; he's cursed officers;

20  he's threatened to kill officers and their families; he's

21  committed the felony of aggravated assault on an officer;

22  he's possessed contraband.  And while awaiting trial for

23  capital murder, he's so concerned, he's doing what in our

24  jail, in your jail?  Making shanks.  You think he was gonna

25  use it?  He has before.  It wouldn't be the first person he

44

1   stabbed.

2           You remember Dr. Gripon told you this phrase:

3   "Past conduct is the best predictor for future conduct.

4   That's why we spent so much time on his past record.  It's

5   pretty hard to think of a crime he hadn't committed.

6           How about the evidence that you heard from

7   the guards and from Mr. Smithey and Mr. Rogers when they

8   told you -- every one of them said the same thing -- there

9   is no place within the system where you can place a

10  defendant and keep other inmates and guards safe.  You

11  remember that?

12          Fights, inmates on inmates, inmates on

13  guards, weapons made, and weapons used, gangs and crimes and

14  violence.  And do you think that Tracy Beatty, who has

15  assaulted or threatened officers 16 times already -- that

16  was before he killed his mother, before he made this

17  weapon -- do you think he would go to jail and be a future

18  danger?

19          Have we proven that to you beyond a

20  reasonable doubt?  Probably.  Probably will.  More than

21  probably.  That's what the evidence shows you.

22          I'm going to ask you this:  Everything we've

23  talked about so far, that's before the doctors came on.  If

24  I had asked you prior to Dr. Gripon and Dr. McNeel

25  testifying, do you think he's going to be a future danger,

45

1  would you have an answer?  But, you know, they came on

2  anyway, and they testified.  And did it make you feel better

3  that they confirmed what you already knew?

4          They told you they had indicators, things

5  that were important to them, things that told them he was

6  going to be a future danger.  Criminal history beginning at

7  an early age, variety of crimes committed, escalation of

8  violence, many types of victims, chronic drug and alcohol

9  abuse, he had sociopathic, antisocial disorder, lack of

10  impulse control, explosive temper, history of violence while

11  incarcerated, he made and possessed deadly weapons, and it

12  was hands-up and up-close personal violence.

13          They used those things.  Are those things

14  important to you?  You bet they are.  And what did they

15  conclude?  No indication that the criminal acts of violence

16  will stop.  None.  High probability of future danger.

17  That's what the doctors said.  Did they confirm what you

18  already knew?  They're right, and so are you.  And the

19  answer to Special Issue Number 1 is yes.

20          And then you move on to Special Issue Number

21  2, the mitigation section.  And I'll tell you this:

22  Mitigation is something that lessens the moral

23  blameworthiness of the defendant.  And I'm not going to

24  spend very much time on it.  Can you guess why?  There is no

25  mitigation.  There's none.  There's not one single, solitary

46

1   circumstance that justifies a life sentence over a death

2   sentence.  Not one.

3              What could it be?  What have you heard?

4   Well, you heard he came from a single-parent home.  He had a

5   hip replacement.  He's got skin disease.  He has one kidney.

6   He drinks and uses drugs.  But you know already that's no

7   defense.

8              Let me tell you, you've already heard it once

9   today, but I've got a real complicated legal argument for

10  those things, things like, "I came from a single-family

11  (sic) home."  You know what it goes like?  Listen.  So what?

12  Do you think there's not people in this very courtroom who

13  came from single-parent homes?

14             The doctor wants to replace my knee.  I can

15  assure you I'm not going to go kill my mother.  Hip

16  replacement, skin disease, single-parent home.  Are you

17  kidding me?  Do you think those things give him the right to

18  go and take the life of his mother in cold blood?  It sure

19  didn't.  It's ridiculous.

20             You've heard no mitigation that rises to that

21  level we talked about to justify life over death.  The

22  evidence has shown you -- it's told you, not me -- the

23  evidence you heard in this courtroom tells you the answers

24  to the special issues.  And you know what they are.

25             The first one is yes; Tracy Beatty is a

47

1    future danger.  And the second one is no; there is no

2    mitigation to justify a life sentence rather than death

3    sentence.

4                 I told you in voir dire that you would know

5    by the answers to your questions the resulting punishment.

6    You remember that?  And you do.  And you know that when you

7    answer yes and no, that Judge Skeen is going to impose the

8    death penalty.

9                 There will be no life sentence.  There will

10   be no 40 more years of a prison system trying to protect

11   other people from Tracy Beatty.  That cannot be done, and

12   you know that.  You can't send him back to general

13   population and let him earn his way back into ad. seg.  You

14   know about earning your way back in.  You know how you do

15   that?  Commit future acts of violence.

16               Don't give him another victim.  The

17   penitentiary couldn't control him before November 25th,

18   2003, when Ms. Click lost her life.  They can't control him

19   now.  He's over there making knives.  And they can't control

20   him in the future.  They just can't.  And the evidence that

21   you heard does not require them to do it.  We've reached the

22   end.  We have finally reached the end.

23               Ladies and Gentlemen, this is a death penalty

24   case.  There's just simply nothing left to do.  There can be

25   no more crimes.  There can be no more victims.  It ends with

48

1  you.  You have the power with your verdict, and it's time

2  for you to let the evidence lead you to justice.  It's time.

3          I plead with you to remember the acts of

4  Tracy Beatty, his life of violence, and I plead with you to

5  listen for the voices of his victims, those of the past and

6  those that would be in the future.

7          When you answer those questions according to

8  the evidence, the death penalty is going to be imposed, but

9  it will be imposed based on the actions of that man, Tracy

10  Beatty.  Don't let anybody guilt you about this verdict,

11  just like we talked about when we started.  You see, we've

12  come full circle.

13          He did it.  He spent his life earning this

14  sentence.  He knows what your verdict is going to be.  He

15  chose that punishment.  He chose it when he chose to commit

16  these crimes his whole life, ending with the one with his

17  hands around the neck of his mother.

18          So go back in that jury room and answer those

19  questions based upon the evidence you heard, and when you

20  do, the death sentence is going to be imposed.  And at long

21  last, at very long last, justice is going to finally be

22  served.

23          THE COURT:  Thank you, Ms. Sikes.

24          Mr. Perkins.

25          MR. PERKINS:  Thank you, Judge.

49

1              A JUROR:  Judge?

2              THE COURT:  Yes.

3              A JUROR:  I need a break.

4              THE COURT:  We will take a 15-minute recess.

5              All rise for the jury.

6              (The jury leaves the courtroom.)

7              (Recess.)

8              (Open court, defendant present, no jury.)

9              THE COURT:  Back on the record in Cause

10  Number 241-0978-04, the State versus Tracy Beatty.  State's

11  counsel is present; the defense counsel is present; and the

12  defendant is present.

13              Bring in the jury, Carleton.

14              (The jury enters the courtroom.)

15              (Open court, defendant and jury present.)

16              THE COURT:  Be seated, please.  Thank you.

17              The Court will recognize Mr. Perkins.

18              MR. PERKINS:  May it please the Court.

19              THE COURT:  Yes, sir.

20              MR. PERKINS:  Counsel for the State.

21              Good morning, Ladies and Gentlemen.

22              I want to talk to you about a couple of

23  things, but the very first thing I want to do is to tell you

24  how much I appreciate people like April Sikes.  She is a

25  tremendous advocate for her side.  She -- and there's

50

1  nothing wrong with this -- had lots of y'all in tears and

2  rightfully so, because what Tracy Beatty did is

3  indefensible.   There's no excuse.

4          I told you that in the first stage of the

5  trial.   There's no excuse for killing your unarmed,

6  62-year-old mother.   That's it.   Just as plain and as simple

7  as I can say it.   He's brutal; he's vicious; he's violent;

8  he's a criminal; he's a dope user; he's a thief; he's a -- I

9  mean, how many bad things do I have to say, does the State

10  have to say, for you to believe it?

11          Now, I'm going to draw the line at something,

12  and I'm going to say something that may be offensive to you,

13  hard to understand, offensive to the State, hard for me to

14  understand.   Tracy Beatty is not 100 percent evil.   Tracy

15  Beatty is not worthless.   Tracy Beatty is a child of God.

16  Believe it, not believe it.   Understand it, not understand

17  it.

18          What we have to defend against at this stage

19  of the trial is the same thing that I've been defending

20  against all along.   Now, I bet some lights have come on for

21  some of you as to why we were giving examples about "I'm the

22  worst person in the world.   I'm the worst scumbag that there

23  ever was."   You know what?   He's not 100 percent worthless.

24  And it's very subtle thing.   And Ms. Sikes is very good at

25  what she does.

51

1    It's easier to kill somebody if you

2 dehumanize them first; make them 100 percent evil; make them

3 a monster; make them worthless.  And you know what?  It's

4 easy to do when you have these kind of facts, right?

5    All you've got to do is just cross that last

6 bridge and say there's nothing about him worth saving.  He's

7 worthless, 100 percent evil.  He's all these things that the

8 State says.

9    I want to talk to you a minute about the

10 cons -- well, I probably should sit down and let Ken talk

11 about this, because he's a lot better than I am -- the

12 concept of respect, respect for other people's opinions,

13 respect for the law, respect for life.  Tracy Beatty doesn't

14 respect any of those.

15    Does that mean you shouldn't?  Does that mean

16 I shouldn't?  Does that mean that once the State convicts

17 him, you know, through their evidence and your verdict?  And

18 let me tell you something.  I respect your verdict.  It is

19 hard to be on a jury.  And I disagree with it.

20    You know what?  This is America.  I still

21 have the right to disagree with your verdict, but I respect

22 it.  I know y'all didn't go back there and five minutes

23 later come back with a verdict.  I respect your hard work.

24 I admire it.

25    I tell you, that it's -- well, I can't tell

52

1   you what I want to say about what it is to be on a jury, but

2   it's not good.  I respect it.  I just respectfully disagree

3   with it.

4           And do you think I'm going down easy?  Do you

5   think I'm going down without a fight?  You don't know me.

6   You don't know that I'm going to stand up for the worst

7   scumbag that you've ever seen, but I am, because he's not

8   worthless.  He's not 100 percent evil.  You can look him in

9   the eyes all you want to, and you're not going to see the

10  devil sitting over there no matter how hard you squint.

11          You're going to see a child of God sitting

12  over at that table and a child of God who has made terrible,

13  horrible criminal decisions his whole miserable life.  How's

14  that?

15          You know, I'm going to echo something that

16  Ms. Sikes said.  Ms. Sikes said that she felt tremendous

17  responsibility.  Oh, yeah?  Switch sides of the table and

18  see how you feel.  She thinks it's scary on her side of the

19  table.  Let's switch sides for a while.  I'll take this

20  side.  This is the easy side.  I've been over here.

21          I feel such tremendous responsibility,

22  because I am charged with watching out for the legal rights

23  of somebody who the State is trying to get y'all to execute.

24  And she feels responsibility?  And I'll tell you how far

25  that responsibility goes with me.

53

1          I look back -- here's the transcript of the

2     trial right here (indicating), and when we get through

3     during the day, I get to go home and read that stuff.  And

4     you know what?  I am an idiot.  Here I am.  I'm an idiot.

5          You know why?  I guess my parents were

6     idiots.  I'll blame it on them.  I don't know why I'm an

7     idiot.  Why did I miss something so obvious?  Why did I miss

8     something so important that if I had caught it and pointed

9     it out to you, we might not even be here.  It might be a

10    situation where we had eliminated the death penalty entirely

11    as a possibility.

12         And you know what?  I talked at closing

13    argument in the guilt or innocence phase about Ken's bad

14    choice of words, nobility instead of macho thing.  If that's

15    the worse thing that Ken Hawk ever does, Ken Hawk will be a

16    genius.  I am an idiot.

17         Because you know what I missed?  Something

18    that's not only mitigating but might have been exculpatory.

19    You are entitled to consider all of the evidence.  It's

20    right there in the Court's charge that you're going to get

21    to take back there with you, all the evidence from the guilt

22    or innocence phase.  And if you consider lingering, residual

23    doubt as mitigating, you're entitled to consider that.

24         Let me talk to you about something that dumb,

25    old Robert missed.  You remember Mr. Bingham's argument at

54

1    the first stage of the trial he argued.  One of the

2    arguments was that Tracy Beatty was guilty because he stole

3    Carolyn Click's car and he's over in Malakoff about an hour,

4    hour and a half after she disappears.  Y'all remember that,

5    I'm sure.

6              I'm an idiot.  I knew that that couldn't be

7    right.  And if you'll recall the evidence in the case, I

8    pointed out to you that there were receipts showing that the

9    car wasn't -- well, that the car was gassed up in Malakoff

10   on the 29th and not on the 25th.

11             And I knew that Stacey Killough had to be

12   wrong about her dates and him showing up that soon

13   afterwards and having exercise and control over property.

14   And I know that y'all found him guilty of burglary of a

15   habitation -- or while in the course of committing burglary

16   of a habitation.

17             And so I'm thinking like, you know, their

18   argument that he stole the car and went over there and that

19   he was there an hour to an hour and a half later, I can

20   understand why you would do it.  Again, I respectfully

21   disagree with that verdict, but I understand.

22             But I am such an idiot.  I went back and read

23   the transcript to try to figure out, based on the notes sent

24   out about where he was and all of that stuff.  I reread it,

25   reread it, reread everybody's.  I knew Stacey Killough had

55

1    to be wrong, and that's why we brought up those gas card

2    receipts and everything else.

3              August the 3rd, 2004, April Sikes asks

4    Lieanna Wilkerson, "Did you see Tracy Beatty on November the

5    25th, two days before Thanksgiving?"

6                   "Yes."

7                   "Under what circumstances?"

8                   "He ate dinner at my house."

9                   "You cooked dinner that night?"

10                  "Uh-huh."

11             Still not paying attention to that yes or no

12   thing.

13                  "Do you recall what time it would have been

14   that he was at your home?"

15                  "The latest would have been about 6:00 or

16   6:30.  I alternated weeks.  I worked either 9:00 to 6:00 or

17   8:00 to 5:00, depending on what week it was.  But it would

18   have been 6:30 at the latest that he would have been there

19   for dinner."

20                  "Do you remember what you cooked?"

21                  "Spaghetti."

22                  "Did y'all eat dinner together then?"

23                  "Yes."

24                  "How long was he at your home?"

25                  "Until 10:00."

56

1          "Do you know where he went after that?"

2          "Home."

3               So I'm an idiot, and this proves that I'm an

4     idiot.  I let them stand up here and argue that my client

5     was in Malakoff in the car an hour after she disappeared.

6     They've got to prove while in the course of committing, and

7     I just missed it.  It went right between my legs, Bill

8     Buckner-style, for you baseball fans.

9               Did they ask him anything about the next day?

10    April Sikes asked, "Did you see Mr. Beatty on the 26th, the

11    day before Thanksgiving?"

12         "Yes."

13         "Under what circumstances?"

14         "He brought me a turkey."

15              So all of the questions about the 25th and

16    the 26th and all of that business about him being in

17    Malakoff an hour, hour and a half afterwards, it's not true.

18    She's mistaken, or she's lying.  It doesn't make any

19    difference, and it's too late now for him to be guilty of

20    anything other than capital murder.  But it's not too late.

21              I sat over on that side of the table and

22    heard Mr. Bingham say time and again that it doesn't make

23    any difference when he used the car.  That's a slick lawyer

24    trick.

25              Maybe the gist of my argument was lost.

57

1  Since the State has the burden of proving beyond a

2  reasonable doubt that the intent to commit the underlying

3  felony had been formulated at the same time or prior to the

4  intent to commit the murder, my point was the fact that he

5  didn't use any of that stuff until days and days later

6  created a reasonable doubt about that.

7          You will understand -- and I'm going to talk

8  some more about this in a second -- but it's hard to sit

9  here and listen to a legitimate argument to be discounted as

10 a slick lawyer trick.  And there was a big debate, and y'all

11 may remember this, about whether Carolyn Click told or asked

12 Tracy Beatty to leave.  I know that y'all recall that.

13         Mr. Bingham stood up, because he gets to go

14 last and he's going to get to go last again today, and he

15 read part of the testimony to you.  Part, the last part.

16 What he didn't read to you is this:  August 2, 2004, Brett

17 Harrison asked Betty McCarty, "Did she" -- talking about

18 Carolyn -- "indicate to you anything about her relationship

19 with Tracy Beatty at that time?"

20         Answer:  "She was unhappy."

21         Question:  "What did she tell you?"

22         Answer:  "She was unhappy about it, and

23 had -- did he say I couldn't say what I interrupted?"

24         "Ma'am, you can."

25         "She said she asked him to leave that day and

58

1   that she said 'I've put up with all I'm going to put up

2   with, and I had asked him to leave,' and she was upset about

3   it, and that's the last time I saw her."

4           Question by Mr. Harrison:  "Did she tell you

5   what time that day she told Tracy Beatty to leave?"

6           You can look, read, whatever you want, all

7   through there.  The only one that ever said "told" was them.

8   The only one who ever said "kicked out" was them.  Does that

9   make any difference?

10          Even if it didn't make any difference on

11  whether or not it created a reasonable doubt about the case,

12  you have the right to consider all the evidence in the case

13  when deciding is there sufficient mitigation in the case

14  that warrants a life sentence rather than the death penalty

15  be imposed?

16          I'm not trying to trick you.  I'm trying to

17  show you what the evidence in the case shows and point out

18  what it doesn't show.

19          What I want to talk about is, is this:

20  Ms. Sikes stands up and says there's no mitigation in the

21  case, not that it's insufficient, but there's just none at

22  all.  This is Mr. One-Hundred-Percent-Evil; this is

23  Mr. Worthless.  Those are words that I didn't choose.

24  That's the words chosen by the State of Texas, because it is

25  so much easier to get a jury to cash in somebody's chips and

59

1  get them out of the game from now on if they don't look at

2  them as being human.

3              That human being, that child of God is the

4  one who contacted law enforcement and told them, "I've got

5  to tell them about some bodies that are buried."  That was

6  him.  That human being is the one who led the police to his

7  mother's body.

8              Now, does that give him the right to kill her

9  in the first place?  Of course not.  Something being

10  mitigating and something being a defense are two different

11  things.  It's apples and oranges.

12             She says there's nothing mitigating because

13  it didn't give him the right to do it.  That's like picking

14  oranges off an apple tree.  You're standing under the wrong

15  tree, Ms. Sikes.  He's the one that solved her

16  disappearance.  He's the one that contacted law enforcement.

17  He's the one that led them to the body.  He's the one that

18  confessed to a murder that he didn't do and finally came

19  around and told the truth about him killing his own mother.

20             Do you have a right to be mad at Tracy

21  Beatty?  Yeah, Tracy Beatty is a dirtbag.  He killed his own

22  unarmed mother in a violent fight, not to rob her, not to

23  burglarize her.  I don't care what y'all said.  Respect your

24  opinion and disagree with it.  He murdered his mother.

25             And for murder or even murder, he could gone

60

1    to prison for the rest of his life, just like you can still

2    do today.  They want to stand up and argue there's no way to

3    ensure that guards would be safe if he was in TDC.  Well,

4    that's true.

5              And there's no way to ensure that guards

6    would be safe in TDC if he's not down there.  There's no way

7    to ensure that I'm going to be safe walking out to my car

8    today.  There's no way to ensure that when I go out to get

9    the paper in the morning, I'm not going to get struck by

10   lightning.

11             There is the second fold in the way that they

12   attack to try to get a death penalty case.  They scare you.

13   I'm scared of everything.  It's that turtle mentality.

14   Let's all duck up in the shell.  Let's not live our lives

15   because we're afraid of what might happen.

16             And you know what?  It's real easy to scare

17   you of Tracy Beatty.  Real easy.  I mean, that's like

18   shooting fish in a barrel.

19             You know what was amazing to me?  That guy

20   from TDC that came down here and talked about, because of

21   their procedures, if you're convicted of capital murder, you

22   don't automatically go to administrative segregation.  You

23   know what?  I live in this community.  I'm a father.  I

24   wouldn't want Tracy Beatty anywhere around my daughter.

25             I mean, so what?  He is never going to be

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

1  around her ever again.  And after today, he will never be

2  around me ever again.  He will never be around Mr. Hawk ever

3  again or any of these people or any of y'all ever again.

4          They want you to kill him because there's no

5  safe place for him.  And what's amazing -- I'm getting back

6  to it -- what's amazing to me is that they won't put him

7  straight in administrative segregation, but they can, and it

8  has happened.

9          You can automatically go -- and I'm telling

10 you, Ladies and Gentlemen, if there was ever a poster child

11 for it, he's sitting right to Mr. Hawk's left.  Got every

12 qualification to go.  Keep him by himself 24 hours a day

13 except for the one hour a day he gets to go out into the dog

14 run with two guards with him.

15          Can you protect those two guards from Tracy

16 Beatty and everybody else in the world?  The answer is no.

17 I didn't see a special issue on that.  That's not what the

18 question is.

19          So when they get in here and tell you that

20 there's not anything sufficiently mitigating, ask yourself

21 this:  Would Carolyn Click's body still be in that hole

22 except for him leading law enforcement to it?  Maybe, but

23 no, he calls the cops and says there's bodies buried, leads

24 them out there and shows them, because it's two days before

25 Christmas and he says he wants his mother out of the hole

before Christmas.

But, see, you can't put anything in the State's bank, because if you start doing that, if he starts getting any kind of credit at all, all of a sudden, he's not 100 percent evil. All of a sudden, he's not 100 percent worthless. All of a sudden, he's not the epitome of evil that they want you to believe so you will help them kill him.

Elevate yourself above the fray. We don't have to dehumanize ourselves to deal with Tracy Beatty. We don't have to sink to his level to deal with him. This is still a civilized society.

You know, I hate my job so much sometimes. It's unpleasant, distasteful, thankless. It's about like being on a jury, I suspect, probably.

What the State wants you to be able to do is, is to say believe him when it's convenient for us, and let us call him a liar the whole rest of the time. And I'm going to give you some examples of that, because it's kind of like they're in a Chinese restaurant and they're ordering like one off of menu A and one off of B and a couple from over here. They're just all over the place with it.

Let me give you an example. When it's convenient or helpful to the State, they want you to believe him. "I'm in the Aryan Circle." Hey, believe it; it helps.

63

1  He didn't have any tattoos or anything to show it, but he

2  said it on occasion.

3            How many other things has he said that they

4  want you to disbelieve?  Well, when he admitted to killing

5  his mother after a horrible fight, they don't want you to

6  believe that.  We can't have you believe him then.

7            When he says to -- I don't even know what her

8  name was, his parole officer -- Simone Norman.  Help me out.

9  Simone Norman.  When she asked him, "Have you seriously

10 thought of killing somebody," and he says, "Yes," we want

11 you to believe that.

12           When he says to Betty McCarty, "I have until

13 December the 17th to be out of the house," they can't have

14 you believing that.

15           It's pick and choose, pick and choose.  And

16 the way to pick and choose is dehumanizing him.  Pick and

17 choose.  Believe what's good for us; disbelieve everything

18 else.  Follow us; we will never mislead you.  Never.

19           And so I don't blame them, and I said all

20 along I didn't blame them for being mad at Tracy Beatty.

21 But when you let anger blur your vision as to what things

22 are, then it's a different story.

23           They want you to answer Special Issue

24 Number 1 yes, and they want you to answer Special Issue

25 Number 1 no, because they know that that will ensure that

64

1  the Court will assess a death penalty against Tracy Beatty.

2  They want you to do that.

3            And these answers and stuff makes this thing

4  seem kind of surreal to me.  Sometimes I'm standing here and

5  I think like -- do you ever get one of those out-of-body

6  kind of experiences where you're standing there and you're

7  like, I-can't-believe-the-stuff-that's-going-around-you kind

8  of feeling?

9            That's kind of the way that I feel as I stand

10  here right now.  This is not pretend.  It's not a game.

11  They are really and truly trying to get answers that will

12  result in him being executed, even though he led officers to

13  her body, even though he solved her disappearance, even

14  though he confessed to killing her.

15            Each one of you -- there's 12 of you up there

16  on the jury, and every single one of y'all have the power by

17  yourselves to stop this.

18            The Court's charge, in paragraph 9, says that

19  you're instructed that any statements of counsel made during

20  the course of the trial, during argument which are not

21  supported by the evidence or statements of law made by

22  counsel not in harmony with the law, as stated to you by

23  Court, should be wholly disregarded.

24            Every single one of you have the power to

25  find mitigation in the case.  Nobody can tell you what

65

1    mitigation is.  Nobody, not even the Court, will tell you

2    what sufficient mitigation is.  It's whatever you think it

3    is.

4              And I want to go back for a minute about

5    talking about respecting other people's opinions.  Your

6    opinion is as important as yours, and yours is as important

7    as yours, and yours is as important as his, and yours is as

8    important as all of theirs, and yours matters just as much

9    as anybody else, and yours makes all the difference, and

10   yours is as important as anybody else on the jury, and so is

11   yours and yours and yours.

12             Every single one of you have the power and

13   the ability to just say no.  Every single one of you have

14   the power and the ability to just say yes.

15             When you get down to Special Issue Number 2,

16   if you believe -- and this is the Court's instructions; this

17   is not me with a slick lawyer trick; this is not me making

18   something up; this is straight out of this charge.  Every

19   single last one of you have the power on Special Issue

20   Number 2 to find sufficient mitigating circumstances and to

21   hold fast to your convictions.

22             You know if that happens, the Court will

23   impose a sentence of life imprisonment, and Tracy Beatty

24   will go to prison and stay in prison until he is 83 years

25   old, if he lives that long, before they ever even think

66

1   about paroling him.  Some of you may be around, but I won't

2   have to worry about it.

3           And I'll tell you this:  If the Parole Board

4   wants to parole him, with his record, he's not ever going to

5   get out of prison.

6           MR. BINGHAM:  Judge, I'm going to object to

7   that statement as a direct contradiction to the law.

8   There's no way to predict what the Parole Board will or will

9   not do.  He's eligible in 40 years.

10          MR. PERKINS:  I'll rephrase it, Judge.

11          THE COURT:  Go ahead, Mr. Perkins.

12          MR. PERKINS:  Statistically speaking, a white

13  male in this country lives to almost 80.  It would take some

14  kind of trick for him to live long enough to ever be

15  eligible for parole.

16          The last topic I want to talk to you about is

17  this:  I've already talked to you about each of y'all having

18  the power.  What I want to talk to you next about is, is

19  having the great responsibility that comes along with that

20  power.  And I don't know where this quote came from, but

21  "With great power comes great responsibility" is the way

22  that I remember it.

23          Each of you, as Ms. Sikes said, took an oath

24  to render a true verdict, so help you God.  I know that

25  during voir dire, a lot of times the State or the Defense

67

1   would ask you how you felt about the death penalty, and they

2   would ask if it was based on Biblical feelings or religious

3   beliefs, the eye-for-an-eye thing.

4           I feel compelled, given the questions that

5   were asked in voir dire of you, to follow up on that.

6   You've heard it said that eye for an eye, tooth for a tooth,

7   but I'll tell you, "Do not resist an evil person.  If

8   someone strikes you on the right cheek, turn to him the

9   other also."  An eye for an eye and a tooth for a tooth is

10  not the way.

11          And I'm going to disagree with Ms. Sikes when

12  she says there's no greater love than the love of a mother

13  for a child.  I believe that there is a greater love than

14  that, and I want to talk to you for a second about the

15  concept of grace.

16          Grace is not something that we earn by good

17  deeds.  Grace is not something that you lose by evil deeds.

18  Grace is a gift that's given to the undeserving.  Grace is

19  something that he didn't show her.  Grace is our salvation.

20          Any one of you can answer yes on the last

21  special issue.  You have that absolute right.  If you find a

22  sufficient mitigating circumstance and you answer that last

23  special issue yes, Tracy Beatty will be sentenced to the

24  penitentiary for life.

25          I don't want you to cave in to pressure.  I

68

1   don't want you to thirst after vengeance.  Vengeance doesn't

2   belong to us.  I want you to respect each other's opinions

3   and beliefs.

4              It's a terrible thing that Tracy Beatty did

5   to Carolyn Click, and he's robbed his family of her presence

6   as a mother and an aunt, cousin, sister, or grandmother.

7   And we've seen a lot of abbreviations over the last week go

8   up on this board.  We've seen people write UCW and PCS and

9   all these abbreviations for all these crimes that Mr. Beatty

10  has committed in his life.

11             I've got one last thing to put up here, one

12  last abbreviation.  Your oath is "so help you God."  I don't

13  relish you the responsibility that you have to answer it.

14  That's the last abbreviation I want y'all to see before

15  y'all go back there and deliberate on what should be done.

16  We can deal with him without killing him.

17             Thank y'all.  I really appreciate y'all's

18  time and attention.

19             THE COURT:  Thank you, Mr. Perkins.

20             Mr. Bingham, 30 minutes.

21             MR. BINGHAM:  Judge, may I have a call when I

22  have seven minutes remaining?

23             THE COURT:  Yes.

24             MR. BINGHAM:  The first thing I want to do is

25  tell you myself, again, how much I appreciate your service

69

1   in this case.  And I'm going to talk a little bit about

2   Mr. Perkins' arguments.

3           One thing that the Court has told you

4   throughout this whole trial is you have to base your verdict

5   on the evidence in the case.  Let me give you a little

6   something about -- and I've done a few of these trials.  Let

7   me tell you a little bit of something about the argument

8   that Mr. Perkins is making.

9           I want to know where he stood up and argued

10  the evidence to you about mitigation?  Where?  There wasn't

11  one.  Well, Mr. Perkins got up and said he's a child of God,

12  and he is.  He got up and said you are given grace, and I

13  guess you are.  And he asked you, what would Jesus do?

14  Well, let me tell you -- let me address these as tactfully

15  as I can.

16          Under his argument, no one would ever get the

17  death penalty.  Never.  Let me tell you why.  If all it

18  took, if the status of the law in the State of Texas were,

19  if you were a child of God, that is mitigation, you could

20  never get the death penalty, the law in the State of Texas

21  would not include the death penalty.  Because everyone that

22  commits a crime is a child of God.

23          That's not what the law says.  The law says,

24  base your verdict on the evidence in the case.  Because let

25  me tell you something.  Carolyn Click turned her cheek, and

70

1    she faced evil, and she paid for it.

2              Because I will tell you one thing, Ladies and

3    Gentlemen.  When you go down there and you talk about Tracy

4    Beatty, let me tell you what I'm not going to do.  I'm not

5    going to have a guard or his daughter come up here and ask

6    me what he's doing back in the pen for 40 years.  I'm not

7    going to have a guard or his daughter come ask me where her

8    daddy's at.

9              Because I'll tell you something.  He's a cold

10   killer.  And when he put his hands around Carolyn Click's

11   neck, he didn't think one time about being a child of God.

12   That's not mitigation based on the evidence.

13             Let me tell you something.  What Mr. Perkins

14   is getting up here and doing is saying everybody is a child

15   of God; therefore, don't assess the death penalty.  His

16   argument is contrary to the state of the law in the State of

17   Texas.

18             You know, Ladies and Gentlemen, for the next

19   40 years, that's why you have that special issue.  Because

20   if he goes down there for the next 40 years, what do you

21   think he's going to do?  He's going to terrorize, he's going

22   to hurt, and he's going to victimize.  That's why you have

23   the special issue.

24             You want me to tell you-all what you need to

25   look at?  Look at all the evidence.  Look at what he's done.

1    If you will hurt an 18-month-old baby and your own mom,

2    you'll hurt anybody.  You look at the way that's sticking

3    out of that box.  He's awaiting a capital murder trial in

4    the Smith County Jail, and he makes that right there

5    (indicating) sticking out of that box.

6                Because I'll tell you this:  He is a future

7    danger, he's a killer, and he's gonna continue to be that.

8    You know, Mr. Perkins talks about he's not a hundred percent

9    evil; he's not a hundred percent worthless.

10               I'll tell you, for 20 years, he's hurt

11   people.  I want to know when the rights of people not to be

12   victimized -- when do the rights of people not to be hurt by

13   Tracy Beatty become paramount to his rights?  When do we

14   finally say, "Enough, Tracy Beatty; we have tried everything

15   with you; we have put you in jail; we have put you in the

16   pen; we have put you on probation; we have put you on

17   parole"?  You know, his conduct never changes.  Never.

18               And then Mr. Perkins tries another argument.

19   Mr. Perkins tries this argument:  "Oh, I'm bad, and I'm

20   dumb.  I missed it."  He didn't miss anything.  Let me

21   explain something to you, just to address these things

22   because you never know what you're going to go back there

23   and talk about.

24               4:00 o'clock -- and I'm not going to spend

25   much time on it because I don't want to get off on a rabbit

72

1  trail.  4:00 o'clock, she comes over and talks to Betty

2  McCarty, the victim does.

3           5:30 -- 5:00 to 5:30, he's in Malakoff.

4  Stacey Killough tells you it takes 30, 45 minutes to get

5  there.

6           6:30, he's back at Lieanna Wilkerson's house.

7  And what does she tell you here?  "He only stays at my house

8  a few minutes.  I'm trying to get my kids ready to go to

9  Killeen."  You didn't miss anything.  That's exactly what

10  the evidence shows.  But what he's trying to get you to do

11  is say, "Oh, God, it couldn't -- what if we missed

12  something?  That's mitigation."

13           That's not mitigation.  Understand something,

14  mitigation is based on not what ifs or what could have been.

15  You heard the evidence, you deliberated, and you found --

16  and you made the right decision.

17           Let me show you something else.  I'm just

18  going to hold it up as I read it so everybody can finally

19  put this to rest.  "Her words to me that afternoon is, 'I

20  told Tracy to leave today.'"

21           "Now, Ms. McCarty, I know that it's hard to

22  remember exactly what was said, but isn't it true that

23  before lunch, you said that she asked him to leave?  Didn't

24  you say that?"

25           "I might have used that phrase, but I

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

73

1   remember what I've been telling all along is she told him to

2   leave that day."

3            Look, Mr. Perkins doesn't have any

4   mitigation.  He knows there's not any based on the evidence.

5   What did you hear in the evidence?  You don't go back there

6   as a jury and say, "Well, I'm just going to give him a life

7   sentence.  I'm going to answer the special issues in such a

8   way that he gets a life sentence just on the off chance

9   maybe I heard something wrong."  That's contrary to the law.

10           Or "I'm going to go back there and give him a

11  life sentence because he is a child of God."  Every criminal

12  defendant is.  Understand, I'm not trying to lessen that or

13  be disrespectful, but that's not the evidence in the case.

14           If you really were going to do what

15  Mr. Perkins was going to ask you to do, you really would

16  have not been fit to sit on this jury, because every

17  criminal defendant would always get a life sentence.  And

18  I'll tell you something.  I'm not going to shed a tear for

19  that defendant, but I'm going to reflect on what he's done,

20  what he's chosen to do, and what he will do.

21           And I'll tell you this:  Do any of y'all

22  really believe that we haven't proven that probably Tracy

23  Beatty will continue to commit criminal acts of violence

24  that will constitute a continuing threat to society?  Is

25  there anyone who really believes that the evidence doesn't

74

1  show that here?  Really?

2              Is there anyone that really thinks that

3  there's any mitigation in Tracy Beatty's life sufficient to

4  warrant life over death?  Really?

5              Because you understand something.  Tracy

6  Beatty did what he did.  He didn't have to take that little

7  18-month-old and do what he did to her, and he didn't have

8  to kill his mother, and he didn't have to use dope all those

9  years, and he didn't have to beat her up and get his parole

10 revoked and come back out when she gave him a second chance

11 and kill her.

12             You see, he didn't have to do all of that and

13 then somehow want to make you feel guilty for something.

14 What do you have to feel guilty for?  Your job as jurors in

15 this case is serious.  You know why it's serious?  Because

16 he's gonna -- Tracy Beatty is gonna encounter a guard in

17 TDC, and for the next 40 years, knowing that he doesn't look

18 at parole until he's 82, what do you think he's going to go

19 down there and do?  What do you think he's going to go down

20 there and do?

21             So instead of reflecting on Tracy Beatty, why

22 don't you -- why don't you focus on his past victims and the

23 future victims to come.  And why don't you say to him

24 enough.  Enough.  Because I'll tell you something.  I'm not

25 gonna have a mother or daughter come to me and ask me about

75

1   their father who was a guard because I know what he's gonna

2   to do.  He made that shank just a month or so ago, just a

3   month or so ago.

4             Mr. Perkins' arguments are arguments when

5   they don't have any -- when they want to get you off on the

6   fact that they have no evidence in mitigation.  None.  There

7   is no mitigation in this case, much less any sufficient to

8   warrant life over death.  So they make the argument to you,

9   well, he's a child of God.

10            The death penalty is not contrary to the law

11  of God.  And your duty, the oath you took before God, was to

12  base your verdict on the evidence.  And if you based your

13  verdict on giving a life sentence because he's a child of

14  God, then no one on this jury would be fit to serve as a

15  jury in a criminal case in the State of Texas because every

16  defendant would automatically get a life sentence.  It's

17  just that simple.

18            And I'll tell you this:  This argument that

19  Mr. Perkins makes, "Well, you know, I missed some things,"

20  he didn't miss anything.  Mr. Perkins is a brilliant lawyer.

21  He's smart enough to get up and try to put some doubt in

22  your mind over in the guilt/innocence evidence as if to say,

23  "Now, if you have anything, just call it a wash and give him

24  a life sentence."

25            The fact that you deliberated your verdict is

76

1    not evidence.  You did what you were supposed to do as

2    jurors.  You don't convict beyond all doubt.  You must

3    believe the defendant is guilty beyond a reasonable doubt.

4            Understand something.  The law recognizes

5    that you can and will have some doubt.  That's why we don't

6    have to prove it to you beyond all doubt.  If that doubt is

7    considered as mitigation, then a defendant could never get

8    the death penalty.

9            You see how that works?  We don't have to

10   prove it to you beyond all doubt, and the fact you have

11   doubt is not evidence.  That's deliberation.  And if that

12   was the standard, as Mr. Perkins has detailed to you, we

13   could never get the death penalty on a defendant in the

14   State of Texas ever.

15           Understand, this is serious, and it is.

16   Mr. Perkins talks about we're trying to kill the defendant.

17   You know what?  I didn't electrocute an 18-month-old baby; I

18   didn't kill my mother; I didn't use dope and neither did

19   you.  He did.  And he should be held accountable for that.

20           And when he goes down to the system that's

21   been unable to change his conduct for 20 years, for 20

22   years, and that guard that's down there is going down there

23   to make a living to support his family, pulls him out of

24   there and that happens to him, that's why you look at future

25   danger, and you say no more.  No more.

77

1          Let me ask you this:  What more could he do

2    that you haven't heard?  What more could the State have

3    brought you in this case than you heard?  What more?  Been

4    on parole, been on probation, been to the pen, been to jail,

5    and while he's awaiting charges, he makes a shank.

6               He kills his own mother.  He electrocutes an

7    18-month-old, who gets to go to the closet and cuddle up as

8    she bleeds.  And a guard that walks up to him and says, "Get

9    a haircut," just like that (snaps fingers).

10              And then Mr. Perkins comes in and makes

11   arguments he knows are contrary to the law.  Well, I'll tell

12   you this:  When you go back and you give him a life sentence

13   because he's a child of God, I'm not explaining it, because

14   that's not the law.  And if that was the standard that the

15   law had, no one would ever get it.  And it's not the law,

16   and Mr. Perkins knows it.

17              You know, Ladies and Gentlemen, you've heard

18   the evidence, and you're going to do what you're going to do

19   in this case, but you have something that is so important to

20   you in your deliberation.  You have the past, which is the

21   best predictor of the future, and you have something only a

22   month ago.

23              Because you look at those -- you look out

24   at -- you look at these guards sitting out here, and you

25   think about those young guards down there working in TDC.

1  Some of them -- some of them are not honest people.  Many of

2  them are as hard-working, family-oriented, and caring as

3  you'll ever find, down there doing a job that I can't even

4  imagine.

5              And I'll tell you something.  They're

6  entitled to protection.  If you believe the evidence shows

7  that there is a probability, that he will probably continue

8  to commit criminal acts of violence that will constitute a

9  continuing threat to society, you took an oath to answer

10  yes.  And if you don't find there's sufficient mitigation to

11  warrant a life sentence over death, which there's clearly

12  not, you took an oath to answer no.

13              Understand something.  I'm not killing the

14  defendant.  You, by your verdict, if it was yes or no, are

15  not killing him.  You're answering special issues based on

16  the evidence.  It just -- it amazes me that he will do the

17  things he's done, hurt the people he's hurt, and then come

18  in here and say do some kind of -- "Oh, well, yeah, but you

19  know what?  It's your fault.  It's your fault.  It's your

20  fault.  You're trying to kill me.  It's your fault."

21              Where were the --

22              MR. PERKINS:  Judge, can we approach the

23  bench?

24              (At the bench, on the record.)

25              MR. PERKINS:  Judge, I'm going to object to

1  the last comment as a direct comment on the defendant's

2  failure to testify in either phase of the trial.

3          The prosecutor said that the defendant --

4  "It's amazing the defendant did this, did this, and then

5  would come in here and say" is a direct comment on his

6  failure to testify.  I would ask for an instruction to the

7  jury to disregard in its entirety the last comment made by

8  the prosecutor in his argument.

9          MR. BINGHAM:  Judge, this is in direct

10  response to the Defense's closing argument.  It's not a

11  comment on the defendant's right not to testify.  I, in no

12  way, made a comment on his right to testify.  It's in direct

13  response to his argument.

14          MR. PERKINS:  He said -- he made a specific

15  reference to the defendant.  He said that the defendant

16  would do the things that he did and then come in here and

17  say -- I'm telling you, Judge.  That's exactly what he said.

18          MR. BINGHAM:  I was referring to the

19  Defense's argument, Judge.

20          THE COURT:  The Court considers it a response

21  to the argument made by defense counsel, and the Court's

22  going to overrule the objection.

23          (End of bench conference.)

24          MR. BINGHAM:  And let me clear up something.

25  The evidence in this case has proved -- has shown no

80

1  mitigation.  Go back there and look at what it says.  It

2  says, taking into consideration -- because that's the gist

3  of the Defense's argument.  They made no argument that he

4  was not a future danger.  He is.  They came up and said,

5  well, he's a child of God; that is mitigation.  Grace;

6  that's mitigation.

7          Let me show you something.  Taking into

8  consideration all of the evidence, all of the evidence,

9  including the circumstances of the offense, the defendant's

10 character and background, and the personal moral culpability

11 of the defendant.  See what the law is asking you to do?

12 Base your verdict on the evidence in the case.

13         Every defendant is a child of God.  The

14 State's entitled to a fair trial, and it's entitled to a

15 jury that renders their verdict based on the evidence and

16 the oath you took as jurors.  We know it's a hard job you've

17 got.  It is.  You didn't ask for it, and we know that.

18         But understand something.  You didn't do the

19 things that brought us here today.  He did.  He's a

20 cold-blooded killer.  He doesn't think twice about his

21 victims.  He doesn't.  He took that 18-month-old baby --

22 don't you know she cried when he stuck that to her belly?

23 She was so scared, as a year-and-a-half-old, that she

24 crawled in that closet and cuddled up and bleed (sic).

25         What do you feel for him?  He put his hands

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

1  around his mother's neck, and he looked her in the eye, and

2  he killed her.  And when he goes down to the pen, if you

3  give him a life sentence, he's going to hurt somebody else

4  because that's what he does.  He feels no remorse for what

5  he does.  He doesn't think the rules apply to him.  He's a

6  killer.

7            Ladies and Gentlemen, you've got to base your

8  verdict on the evidence in the case, just like the special

9  issues say.  You -- I'm not going to go back through the

10  evidence.  You go back there and remember and you think

11  about the arguments in this case.  It's based on the

12  evidence in the case.

13            We know it's -- we know your job is serious.

14  I submit that your job is difficult in that the decisions

15  you make are serious.  But on the evidence you must

16  consider, your decision should be pretty clear in this case.

17            I want to tell you, Mr. Perkins said, "Switch

18  sides of the table with me."  Well, you know something?  I'm

19  sitting on the prosecution side of the table.  I'm the

20  elected district attorney in this county.  And I know who

21  killed, and I know who was killed.

22            And if you want a tremendous responsibility

23  in a case, as Mr. Perkins says, it's sitting next to this

24  defendant.  I disagree.  What is the tremendous

25  responsibility is to make jurors understand it's not whether

82

1    you're a child of God.  It's to base it on the evidence.

2            And if you want a tremendous responsibility,

3    talk to the family of Carolyn Click, who didn't kill anyone.

4    And if you want a tremendous responsibility, go back to your

5    office up on the fourth floor and sit in the chair and worry

6    about those guards who are going to have to encounter this

7    defendant over the next 40 years.

8            You base your verdict, Ladies and Gentlemen,

9    on the evidence.  Mr. Perkins told you he's brutal, and he's

10   vicious, and he's a career criminal, and he doesn't respect

11   life.  The Defense's own words ought to answer that first

12   special issue for you.

13           And then they give you the arguments to get

14   you off point that aren't the evidence in the case, because

15   there is no mitigation sufficient to warrant life over

16   death.  What mitigation could there be when you read the

17   special issue?

18           And when you go back to answer it, read it.

19   Taking into consideration all of the evidence.  What

20   evidence did you hear?  Not argument of counsel, not child

21   of God, not grace.  But what evidence did you hear from that

22   witness stand right there that was mitigating and reduced

23   the blameworthiness of this defendant sufficient to warrant

24   life over death?  What?  That's what the law says.

25           And I know this is emotional for y'all.  I

83

1  look out there, and I see the Kleenexes.  And you know what

2  I hope, though?  I hope -- and I don't know why there's -- I

3  don't specifically what's in your minds.  But I hope that

4  when you go back there, that you feel as heart felt for the

5  victims of Tracy Beatty as you do for Tracy Beatty, if you

6  do for him at all.

7              And I hope when you go back there and you

8  deliberate this case, that you look forward, that you look

9  at what he's done in the past, that you look at what he's

10 done in the past, and you look forward to the future in

11 determining whether he's a future danger.

12             Because somebody's life may depend on it.

13 Because I'll tell you something.  There's no rolling back

14 time.  When Tracy Beatty goes down to the pen and he hurts

15 somebody, and he's gonna, you know, we don't get to come

16 back in here and rewind what we've done.  This is it right

17 now.

18             So base your verdict on the evidence.  And

19 you remember something.  He made his choices, and he did it.

20 What you're doing back there is following the law and

21 answering the special issues based on the law.  Don't make

22 any apologies for him.  Don't feel any guilt for what he

23 did.  You understand that you're following the law in the

24 case and basing your verdict on the evidence.

25             Ladies and Gentlemen, I'm gonna sit down.

84

1   And I know you're tired, and I know you've heard the

2   evidence.  I will submit to you that this case cries for the

3   death penalty, and it does to this extent:  That the

4   evidence clearly shows beyond a reasonable doubt that he

5   would probably continue to commit criminal acts of violence

6   that would constitute a continuing threat to society.

7                My God, you just have to look to what he's

8   done in the past, what he did only a month or so ago, what

9   the doctors told you.  And as you look at the evidence,

10  after you've answered that one yes, and you go down to the

11  mitigation, you ask yourself, based on the evidence, what

12  did you hear that was sufficient to warrant life over death?

13  What did you hear from the witness stand?  That's what you

14  base your verdict on in this case.

15               Thank y'all very much.

16               THE COURT:  Thank you, Mr. Bingham.

17               Ladies and Gentlemen, you will now retire to

18  the jury room to consider your verdict in the case, the

19  charge of Court, as you well know, will come in with you.

20  If you do need additional copies of the charge of the Court,

21  if you'll notify the bailiff, he'll advise the Court, and

22  I'll have additional copies delivered in to you.

23               You will retire now for your deliberations.

24               All rise for the jury.

25               (The jury leaves the courtroom.)

85

1          (Open court, defendant present, no jury.)

2          THE COURT:  All right.  We'll be in recess

3  waiting for the jury.

4          (Jury deliberations.)

5          (The jury enters the courtroom.)

6          (Open court, defendant and jury present.)

7          THE COURT:  Be seated, please.  Thank you.

8          On the record in Cause Number 241-0978-04,

9  the State of Texas versus Tracy Beatty.  The record should

10  reflect that State's counsel is present; the defense counsel

11  is present; the defendant is present; and the members of the

12  jury are present and seated in the courtroom.

13          Mr. Harris, I received a note from you that

14  the jury had reached a verdict in this case; is that

15  correct?

16          THE PRESIDING JUROR:  Yes, Your Honor.

17          THE COURT:  Mr. Foreman, have you completed

18  the certificate, which is at the very end of the charge, the

19  last page in the charge?

20          THE PRESIDING JUROR:  Yes, Your Honor.

21          THE COURT:  All right, sir.  Would you hand

22  the verdict, please, to the bailiff for delivery to the

23  Court?

24          (The verdict is handed to the bailiff.)

25          THE COURT:  All right.  If the defendant

1   would rise at this time.

2               THE DEFENDANT:   (Complies.)

3               THE COURT:   In Cause Number 241-0978-04, the

4   State of Texas versus Tracy Beatty, the Court has received

5   the following answers to the special issues contained in the

6   verdict form provided to the jury at the beginning of

7   deliberations.

8               "Special Issue Number 1:   Is there a

9   probability that the defendant, Tracy Beatty, would commit

10  criminal acts of violence that would constitute a continuing

11  threat to society?"

12              Answer to Special Issue Number 1:   "We, the

13  jury, unanimously find and determine beyond a reasonable

14  doubt that the answer to this Special Issue Number 1 is

15  'yes,'" signed Mitchell Harris, Foreman.

16              "Special Issue Number 2:   Taking into

17  consideration all of the evidence, including the

18  circumstances of the offense, the defendant's character and

19  background, and the personal, moral culpability of the

20  defendant, is there sufficient mitigating circumstance or

21  circumstances to warrant that a sentence of life

22  imprisonment rather than a death sentence be imposed?"

23              Answer to Special Issue Number 2:   "We, the

24  jury, unanimously find and determine that the answer to this

25  Special Issue Number 2 is 'no,'" signed by the Foreman of

87

1    the Jury, Mitchell Harris.

2                    Jury certificate:  "We, the jury, return in

3    open court the above answer or answers as our answer or

4    answers to the special issue or special issues submitted to

5    us and the same is our verdict in this case," signed by

6    Mitchell Harris, Foreman of the Jury.

7                    Let me ask the jury and each member of the

8    jury at this time, if the verdict that the Court just read

9    and the answers to the special issues contained in the

10   verdict form that the Court just read is your verdict, would

11   you so signify by raising your right hand?

12                    (The jury complies.)

13                    THE COURT:  The record should reflect that

14   all 12 members of the jury have raised their right hand.

15   Thank you.

16                    Is there any request from the State,

17   Mr. Bingham, to have the jury individually polled?

18                    MR. BINGHAM:  There's not.

19                    THE COURT:  Is there any request from the

20   Defense, Mr. Perkins, to have the jury individually polled?

21                    MR. PERKINS:  No, Your Honor.

22                    THE COURT:  The Court, then, does, having

23   reviewed the verdict form as returned to the Court by the

24   jury, the Court does accept the verdict, has received the

25   verdict, and will order it filed among the papers of the

88

1   cause with the clerk of the Court to note the time it was

2   received by the Court upon the verdict form.

3            Mr. Bingham, on behalf of the State, is there

4   any legal reason that you know why the Court should not now

5   at this time discharge the jury?

6            MR. BINGHAM:  I don't know of any, Judge.

7            THE COURT:  Mr. Perkins, any legal reason,

8   then, that you would have to offer as to why at this time

9   the jury should not be discharged?

10           MR. PERKINS:  Without waiving any previous

11  objections that the Defense made to the sentencing

12  procedures, sentencing scheme, or any other objection that

13  we have to evidence, there's no additional legal reason at

14  bar, Your Honor.

15           THE COURT:  Thank you, Mr. Perkins.

16           Ladies and Gentlemen of the Jury, upon

17  receiving your verdict, which has been read by the Court and

18  which you have all signified by raising your right hand that

19  it is the individual verdict of each one of you, 12 jurors,

20  the Court will now be able to discharge you from jury

21  service in this case and release you from all of the

22  instructions previously given to you by the Court.  That is,

23  that you are you free to talk about this case now to anyone

24  that you wish to discuss it with.

25           At the same time, you do not have to discuss

1   this case with any individual.  Occasionally, after jury

2   service, you may be asked to give an affidavit regarding

3   your jury service.  You are free to give the affidavit; you

4   are free to decline to give any affidavit.  In other words,

5   you can talk to whoever you want to about this case, or you

6   don't have to talk to anyone about this case.  That's a

7   personal, private decision that you are entitled to make and

8   that each one of you will make yourselves.

9            You will make the decision as to whether or

10  not you want to discuss the case with anyone as to whether

11  or not you want to give an affidavit if you're asked to do

12  so.  You can discuss the case with anyone you want to, or

13  you can decline to discuss the case with anyone that you do

14  not want to talk to about it.  That is each one of your

15  individual decisions to make.

16            The Court wants to thank you for all of the

17  time that you have invested in this case.  The Court is well

18  aware that, certainly, this type case where it is a capital

19  murder case and where the State is seeking the death penalty

20  is a case where, although all jury service is jury duty,

21  certainly when you serve on this type case, going through

22  the individual voir dire examination and then going through

23  the trial itself, including the special issues which have to

24  be answered in a case such as this, the Court is well aware

25  that this is really jury service above and beyond the call

1   of duty, and it is jury duty.

2            And for those of us who have been in the

3   criminal justice system for a long time and have chosen it

4   as a profession in various capacities, we work in the system

5   every day.  Just about everyone involved in this case has

6   been in the criminal justice system for a long time.

7            I think what is especially important and we

8   remember and I would want to say to you is that it is

9   individuals such as yourself who are chosen through the

10  designed process to serve on a jury in this case, a capital

11  murder jury, where the State was seeking the death penalty,

12  that perform the most important function in our criminal

13  justice system.

14            It goes without saying that the system would

15  not work without your service.  It's clear to this Court

16  that you have all closely followed the Court's instructions,

17  all followed the law as given to you in the Court's charge.

18  You have been a very attentive jury.  Where I am sitting

19  here, it's been very clear to me that you have all paid very

20  close attention to all of the testimony of the witnesses and

21  the exhibits as they came in before you in this trial.

22            The Court certainly recognizes that this is

23  difficult jury service that you have just performed.  At the

24  same time, our system, as it is designed to work, simply

25  could not function without individuals such as you.  And you

1   have the Court's deep appreciation for all the time that you

2   have put in individually in this case.  I'm very aware that

3   you have all had to make sacrifices individually from a

4   businesses standpoint or of a personal standpoint to be down

5   through the evidence in this trial all the way down to the

6   verdict that you've rendered and returned into court today.

7           So on behalf of the Court, and I know on

8   behalf of the State and the Defense, you have our deep

9   appreciation for the service that you have rendered in this

10  case.

11          It has been said, and I think -- we often

12  think in terms of military duty, and certainly at this time

13  that our country is engaged around the world, certainly at

14  this particular time with so many men and women so far away

15  from home in conflict, I think it's extremely important and

16  I know that you do and we all recognize and everyone

17  recognize that one of the primary rights that those soldiers

18  are fighting for is what just took place over the last two

19  weeks of evidence coming in, a case tried in as careful and

20  diligent a manner as it could be done, both the State and

21  Defense represented by very able and capable, especially

22  experienced, lawyers.

23          As a judge, we try to make the best rulings

24  that we can based on what we believe the law to be.  But in

25  the final analysis, it is certainly your service that is,

92

1    basically, the cog in the wheel that makes the wheels of

2    justice in our criminal justice system work.

3              And, again, I just want to express to you --

4    I know the sequestration order also, I'm sure, caused some

5    difficult and hardship.  It's not one the Court likes to

6    have to enter, but in a case such as this, it normally has

7    to be done at some point.

8              Again, you have the Court's deep appreciation

9    for your service.  The Court is going to be able to excuse

10   you at this time.

11             I will say to you that if you have in regard

12   to your service, any suggestions, any complaints, any way

13   you think that we could do a better job of accommodating you

14   while you're here in jury duty during a trial, feel free to

15   call me and let me know.  Feel free to call my staff and let

16   them know.

17             I certainly know that one of the most

18   frustrating things to a jury is down through a lengthy

19   trial, as this was, that many times you are out of the

20   courtroom more than you would understand why you were out of

21   the courtroom.  In other words, that you're out of the

22   courtroom probably it seems to you too many times.

23             And we're working in here in the courtroom.

24   We're taking up matters outside of your presence that under

25   the law have to be taken up outside of your presence.  But

93

1   at the same time, I know that's frustrating.  That's just

2   part of the way our system works and part of what we have to

3   go through to ensure a fair and impartial trial.  Although I

4   know it's frustrating to you, I hope you understand it's

5   part of our process.

6                You have been a very patient jury.  You have

7   fulfilled, in the Court's assessment, the duty in this case

8   to the highest standards that we can expect from jurors.  So

9   with that, the Court will, at this time, excuse you, release

10  you from the instructions of the Court.

11               And let me say to you that what we're going

12  to try to do is the deputies will go down with you, take you

13  down to the grand jury room where you've been for a good

14  period of time.  I know that you have belongings here,

15  personal belongings, like up in the van.  I think that some

16  of you may need to make telephone calls.

17               Carleton will be going back down with you, as

18  well as other bailiffs, and you will be able to make

19  whatever telephone calls you need to make, if someone is

20  coming to pick you up.  Once all of those arrangements are

21  made and we are in a position to, then you will be able to

22  go ahead and have someone pick you up and leave with them or

23  deputies will escort you out to your vehicles, out to your

24  cars, to leave.

25               There will be in the courtroom a formal

94

1  sentencing process that will take place.  Certainly, any of

2  you that want to, you can be present for that formal

3  sentencing process, if you wish to wait and see that process

4  take place.  At the same time, we have made the arrangements

5  where we can get you on down to the grand jury room where

6  you can get everything done you personally need to get done,

7  where you can be picked up or be escorted to your car just

8  as soon as possible.

9           And as soon as -- we'll have it where you can

10  go ahead and make the calls.  And then as soon as we can get

11  you on out to your cars and to be picked up, we will do

12  that.  If you will bear with us down there just a little bit

13  longer as soon as we can, that will all be done.

14           So at this time, again, with the Court's deep

15  appreciation, you may be excused down to the grand jury room

16  where deputies will be with you until all the matters can be

17  taken care of, and then you can leave in your cars with the

18  bailiff escort or individuals that can be called to come on

19  down and pick you up.

20           All rise for the jury.

21           (The jury leaves the courtroom.)

22           (Open court, defendant present, no jury.)

23           MR. BINGHAM:  May I approach?

24           (At the bench, on the record.)

25           MR. BINGHAM:  I was asking about him talking

95

1   about their jury service.  He actually said that.

2                    (End of bench conference.)

3                    THE COURT:  Ladies and Gentlemen, thank you

4   very much.

5                    You can be excused at this time.

6                    MR. BINGHAM:  I apologize, Judge.  I missed

7   that.

8                    THE COURT:  Be seated.

9                    That's okay.

10                   All right.  At this time, we will proceed

11  with the formal pronouncement of sentence.  If the defendant

12  will stand.

13                   THE DEFENDANT:  (Complies.)

14                   THE COURT:  On behalf of the State, is there

15  anything you have to present before the Court formally

16  pronounces the sentence, Mr. Bingham?

17                   MR. BINGHAM:  Your Honor, we do not.

18                   THE COURT:  On behalf of the defendant,

19  Mr. Perkins, is there any legal reason you wish to offer at

20  bar as to why the sentence should not now formally be

21  pronounced?

22                   MR. HAWK:  Yes, Judge.  On behalf of the

23  defendant, we would renew all of the objections that we made

24  to the capital sentencing scheme and renew our request of

25  the Court to set side the capital sentence and verdict as

96

1   well as all the motions we filed.

2            We ask and reurge at this time for the Judge

3   to void the verdict of the jury and prevent the imposition

4   of the death penalty for the reasons enumerated in those

5   motions.  We wish to preserve each error and ask the Court

6   at this time to rule on each of the requests made prior to

7   this time before the sentencing.

8            THE COURT:  In regard to the sentencing

9   scheme?

10           MR. HAWK:  All of the motions we've made with

11  regard to the capital sentencing scheme?

12           THE COURT:  Which the Court has previously

13  ruled on?

14           MR. HAWK:  You have.

15           THE COURT:  The Court's rulings on all of

16  those motions regarding the capital sentencing scheme that

17  the Court has earlier denied are denied again.

18           MR. HAWK:  Thank you, Judge.

19           THE COURT:  Therefore, at this time, the

20  Court, finding no legal reason at bar, Mr. Beatty, pursuant

21  to the jury's verdict in this case finding you guilty of the

22  offense of capital murder, as alleged by the State in its

23  indictment, and the jury having found you guilty of the

24  offense of capital murder and pursuant to the jury's

25  verdict, answering the special issues in this cause, Special

97

1   Issue Number 1 where the jury found that unanimously beyond

2   a reasonable doubt that the answer to Special Issue Number 1

3   is "yes," and the jury having answered Special Issue

4   Number 2 unanimously, and the jury having found that the

5   answer to Special Issue Number 2 unanimously was "no," and

6   is "no," based upon those answers to the special issues

7   submitted to the jury and the jury's earlier verdict finding

8   you guilty of the offense of capital murder, pursuant to the

9   provisions of Texas law, the Constitution of Texas and of

10  the United States, and the Court having accepted these

11  verdicts of the jury and have them filed among the papers of

12  the cause, the Court, at this time, does sentence you,

13  pursuant to law, to death by lethal injection.

14              In connection with this sentence of death,

15  there is a mandatory appeal direct to the Texas Court of

16  Criminal Appeals, the Court of Criminal Appeals of the State

17  of Texas.

18              The Court, in connection with the sentencing,

19  does not at this time set an execution date.  Texas law

20  requires that although the sentence of death has now been

21  pronounced by the Court that you do have an automatic

22  mandatory appeal.  That automatic mandatory appeal will take

23  place.  The transcript records and all of those documents

24  will be prepared, the court reporter's record, the clerk's

25  record, and briefs filed.

98

1             The Texas Court of Criminal Appeals will then

2 hear the case and issue their decision.  If they issue a

3 mandate back to this Court affirming the judgment and

4 sentence of the Court, then this Court would, pursuant to

5 Texas law, proceed with setting a date of execution.

6             There's also a separate appellate procedure;

7 that is an 11.071 writ of habeas corpus procedure.  It is a

8 collateral appeal that is provided for by Texas law,

9 mandated by Texas law, to be provided you and sanctioned --

10 has been sanctioned by the Federal courts.

11             If you are too poor or too indigent to hire a

12 lawyer to represent you in connection with the direct appeal

13 and in connection with the 11.071 writ of habeas corpus

14 appeal, this Court will, at your request, appoint counsel to

15 represent you in those proceedings.

16             Are you requesting counsel in that regard,

17 Mr. Beatty?

18             MR. HAWK:  Just one moment.  We're having a

19 conference.

20             THE COURT:  Mr. Hawk, perhaps -- I'm sorry.

21 The Court -- well, go ahead, Mr. Hawk.  I'll hear what you

22 have to say.

23             MR. HAWK:  Because there are two parallel

24 appellate mechanisms at this time, Mr. Beatty does not

25 immediately request counsel on his 11.071 writ, but we will

99

1   address with the Court and would ask the Court at the

2   conclusion of this proceeding to entertain a matter for

3   Mr. Perkins and myself regarding his direct appeal.

4               THE COURT:  In that matter, what the Court

5   would do, Mr. Hawk and Mr. Perkins, is simply require you to

6   continue to serve in your capacity as counsel for the

7   defendant to inform him fully about the appellate processes

8   and appellate rights.  And then if there's going to be an

9   application for court-appointed counsel, then I -- the Court

10  would request that you get the necessary affidavit of

11  indigency filed.

12              And the Court would then make an appointment

13  of counsel off the affidavit of indigency, so I'm,

14  basically, just going to continue your representation, if

15  not further, but certainly at this point through advising

16  him of his appellate rights and the procedures involved in

17  the appellate rights and to assist the Court in terms of if

18  there's going to be a filing of an indigency affidavit so

19  that the Court can appoint other counsel, if there's going

20  to be other counsel.

21              MR. HAWK:  Just one moment, Judge.

22              THE COURT:  Mr. Hawk, I'm talking in terms of

23  the direct appeal.

24              MR. HAWK:  Right.  And, Judge, here's what I

25  suspect we're going to do.  Because of the matters raised

100

1  and motions for new trial, if there is one filed, may bear

2  not only on the the merits of the case in chief and all the

3  matters that occurred during the course of trial, but may

4  also directly reflect upon the performance of counsel who's

5  appointed at trial.

6         We are anticipating to be filing a motion

7  with the Court to withdraw from the cause so that counsel

8  can be appointed for Mr. Beatty on his direct appeal to be

9  in a position with sufficient time to file a motion for new

10  trial and has an adequate opportunity to address issues

11  associated with effective representation.

12         MR. PERKINS:  In the meanwhile, Judge,

13  obviously we have no objection to continuing our duty to

14  advise him as to his appellate rights and the timelines

15  associated therein.

16         THE COURT:  Thank you, Mr. Perkins.

17         Then if the -- Mr. Perkins and Mr. Hawk, I

18  will continue you in the capacity of representing the

19  defendant for the purpose of what the Court has outlined

20  here subsequent to the assessment and pronouncement of

21  sentence.

22         Once the Court has received a mandate

23  affirming the judgment and sentence of the Court and an

24  order that denies the application from writ of habeas corpus

25  from the Texas Court of Criminal Appeals, if the Court

101

1   receives both the mandates, then at that time, pursuant to

2   Texas law, Mr. Beatty, you would be returned back to this

3   Court, and at that time, the Court would set a date of

4   execution pursuant to the statutes and the law of the State

5   of Texas.

6               You've been represented by Mr. Perkins and

7   Mr. Hawk, your attorneys.  Do you have any problems or any

8   complaints whatsoever with the representation that Mr. Hawk

9   and Mr. Perkins have provided you in this case?

10              THE DEFENDANT:  No.

11              THE COURT:  Sir?

12              THE DEFENDANT:  No, sir.

13              THE COURT:  The Court, then, does formally

14  pronounce the sentence.  The jury having found you guilty of

15  capital murder and based on the jury's answers to Special

16  Issue Number 1 and Special Issue Number 2 submitted to the

17  jury in this case, the Court does pronounce the sentence as

18  death by lethal injection.

19              You may be seated at this time.

20              THE DEFENDANT:  (Complies.)

21              THE COURT:  Mr. Bingham, we're going to

22  proceed at this time pursuant to Texas Constitution,

23  victim's rights legislation, to take up any victim-impact

24  testimony.

25              MR. BINGHAM:  Yes, sir.

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS

1          THE COURT:  Victim's statement.

2          MR. BINGHAM:  Yes, sir.

3          THE COURT:  Which, as you know, is not

4   recorded on the record, but any statements that victims wish

5   to make.

6          MR. BINGHAM:  Judge, we do have three of the

7   victim's family members that wish to give statements.  We

8   have informed them of the protocol, which that is done, and

9   would only inquire of the Court whether the Court wants to

10  take the witness stand or where they are is their choice.

11         THE COURT:  I believe they can come around,

12  Mr. Bingham, to the witness stand.

13              (Victim-impact statements.)

14         MR. BINGHAM:  Judge, that concludes the

15  victim-impact testimony.

16         THE COURT:  Back on the record in Cause

17  241-0978-04, the State of Texas versus Tracy Beatty, the

18  State being present; defense counsel present; the defendant

19  is present.

20              Is there anything further, Mr. Bingham, on

21  behalf of the State?

22         MR. BINGHAM:  No, Your Honor.

23         THE COURT:  Is there anything further,

24  Mr. Perkins, on behalf of the Defense?

25         MR. PERKINS:  Not at this time, Your Honor.

103

1          THE COURT:  Then the Court -- Mr. Beatty, you

2   will be remanded in the custody of the Smith County

3   Sheriff's Department until such time as you can be

4   transported to the Texas Department of

5   Corrections-Institutional Division for the sentence of the

6   Court to be carried out.

7               We'll be in recess.

8               (End of proceedings.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

104

1   STATE OF TEXAS   *

2   COUNTY OF SMITH   *

3       We, STEVE R. AWBREY, CSR, Official Court Reporter, and

4   KIM CHRISTOPHER, CSR, RPR, Deputy Official Court Reporter,

5   for the 241st Judicial District Court in Smith County,

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all of the

8   proceedings in the foregoing styled and numbered cause, all

9   of which occurred in open court or in chambers and were

10  reported by us.

11      We further certify that this transcription of the

12  record of the proceedings truly and correctly reflects the

13  exhibits, if any, offered by the respective parties.

14      Witness our hand this the _19_ day of

15  _May_____, 2005.

16

17

18

19

20  KIM CHRISTOPHER, CSR, RPR        STEVE R. AWBREY, CSR
    Texas CSR Number 4219            Texas CSR Number 3940
21  Expiration date:  12-31-06       Expiration date: 12-31-05
    Deputy Official Reporter         Deputy Official Reporter
22  241st Judicial District Court    241st Judicial District Court
    Smith County, Texas              Smith County, Texas
23  100 North Broadway, Room 304     100 North Broadway, Room 221
    Tyler, Texas  75702              Tyler, Texas  75702
24  Telephone:  (903) 535-0575       Telephone:  (903) 535-0603

25

STEVE R. AWBREY, CSR AND KIM CHRISTOPHER, CSR, RPR
241ST JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS